UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL WASHINGTON** | : | CASE NO. 1:23-cv-230 |
| c/o Finney Law Firm, LLC | : | |
| 4270 Ivy Pointe Boulevard, Suite 225 | : | JUDGE: |
| Cincinnati, Ohio 45245 | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **PLAINTIFF'S COMPLAINT** |
| **CITY OF CINCINNATI, OHIO** | : | **AND JURY DEMAND** |
| City Hall | : | |
| 801 Plum Street | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| and | : | |
| | : | |
| **SHERYL LONG**, individually and | : | |
| in her official capacity as City | : | |
| Manager of the City of Cincinnati | : | |
| City Hall | : | |
| 801 Plum Street | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| and | : | |
| | : | |
| **AFTAB PUREVAL**, individually | : | |
| and in his official capacity as Mayor | : | |
| of the City of Cincinnati | : | |
| City Hall | : | |
| 801 Plum Street | : | |
| Cincinnati, Ohio 45202 | : | |
| **Defendants.** | | |

COMES NOW Plaintiff Michael Washington ("Chief Washington" or "Plaintiff"), by and through his undersigned legal counsel, and for his Complaint against Defendants City of

1

Cincinnati, Ohio, et al., ("City") and Sheryl Long ("Long"), and Aftab Pureval ("Pureval") (collectively, "Defendants") alleges as follows:

## PARTIES

1. Chief Washington is a resident of this judicial district. Plaintiff was most recently employed as the Fire Chief for the City of Cincinnati.

2. Defendant City of Cincinnati is a municipality organized under the laws of the State of Ohio.

3. Defendant Sheryl Long is a resident of this judicial district and is the City Manager of the City of Cincinnati. Defendant Long is being sued individually and in her official capacity.

4. Defendant Aftab Pureval is a resident of this judicial district and is the Mayor of the City of Cincinnati. Defendant Pureval is being sued individually and in his official capacity.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 because Plaintiff's federal claims arise under the laws of the United States, including 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

6. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims derive from the same operative facts and are so related to his federal claims over which the Court has original jurisdiction that they form a part of the same case or controversy.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff was employed in this Division and District, and the unlawful conduct alleged in this Complaint has taken place within this Division and District.

## **FACTUAL ALLEGATIONS**

8. On March 18, 1993, Chief Washington began his employment with the City of Cincinnati Fire Department (the "Fire Department").

9. Throughout his 30-year tenure, Chief Washington was a dedicated and loyal member of the City of Cincinnati Fire Department, receiving numerous commendations from his superiors and the City for his professionalism, leadership, passion, courage, and integrity.

10. Plaintiff has held almost every rank and position within the Fire Department, including: Fire Recruit; Fire Fighter; Fire Fighter, Paramedic 1; Fire Apparatus Operator; Fire Apparatus Operator, Paramedic; Fire Lieutenant; Fire Captain; Fire District Chief; Assistant Fire Chief; and Fire Chief.

11. Additionally, Plaintiff took remarkable pains throughout his career to educate himself and keep fully up-to-date on all aspects of fire science, administration, and leadership. He obtained Associate's and Bachelor's Degrees in Fire Science Engineering, and a Master's Degree in Public Administration. He is also a graduate of the United States Fire Administration, the Carl Holmes Executive Development Institute's Executive Training Program for Minority Firefighters, and the Los Angeles City Fire Department Leadership Academy's Behavioral Science Program. Altogether, Chief Washington acquired for himself approximately 20 years of education in this profession, all with the goal of becoming an outstanding leader and public servant to the people of Cincinnati.

12. It is fair to say, in short, that Chief Washington devoted his life to the City of Cincinnati Fire Service. It is the only career he has ever had, or ever wanted to have.

13. In May 2021, Chief Washington reached the pinnacle of his career when he was appointed the City's Fire Chief by then City Manager Paula Boggs Muething.

14. Chief Washington was humbled by this appointment. He was truly grateful for the opportunity to serve in this capacity, and equally grateful that the City he had served so faithfully, and for so long, had honored him in this way.

15. While being justly proud of everything he had achieved up to that point in his career, Chief Washington resolved to work harder than ever to reward the trust the City had placed in him.

16. From the date he was first hired by the Fire Department to his appointment as Fire Chief, Chief Washington never received any disciplinary action for discrimination or harassment of any employees. He always strived to treat all members of the Fire Service with the respect and dignity they deserved, and without reference to their race, creed, color, or sex.

17. More than this, Chief Washington took particular care throughout his career to help advance and improve the position and work environment of female employees of the Fire Service.

18. On January 4, 2022, Defendant Pureval took office as Mayor of the City of Cincinnati.

19. Between May 2021 and the induction of Defendant Pureval, Chief Washington continued his perfect record of never having received any disciplinary action for any type of employment discrimination or harassment.

20. Between May 2021 and the induction of Defendant Pureval, Chief Washington received no written reprimands, verbal reprimands, or warnings concerning his conduct or oversight of the Fire Department.

21. On September 1, 2022, the City Council voted to approve Defendant Pureval's recommendation of Defendant Long as the new Cincinnati City Manager.

22. Between the induction of Defendant Pureval and installation of Defendant Long, Chief Washington continued his perfect record of never having received any disciplinary action for discrimination or harassment.

23. Between the induction of Defendant Pureval and installation of Defendant Long, Chief Washington received no written reprimands, verbal reprimands, or warnings concerning his conduct or oversight of the Fire Department.

24. In November 2021, after he had been Chief for six months, Plaintiff's employment as Chief of the Fire Service became terminable only "for cause" under Article V, §6 of the City Charter. A true and accurate copy of the Charter provision is attached hereto as Exhibit A.

25. This was an important milestone. It meant Plaintiff no longer served at the will of the City Manager. He now had legal protection against the possibility of an unfair or unjustified dismissal.

26. In December of 2022, leadership from both the City and Fire Department met with the organization Women Helping Women to discuss implementing the WorkStrong Program (the "Program"), a four-phase program intended to focus on Gender Based Violence in the workplace.

27. Phase One of the Program launched on February 7, 2023, and ended February 23, 2023.

28. On March 13, 2023, Women Helping Women provided a Training Summary of the Fire Department's participation in Phase One of the Program. As shown in the WorkStrong

Summary, the outcome of the Program was positive overall, and Phase Two of the Program was slated to begin on March 20, 2023.

29. A true and accurate copy of the WorkStrong Summary is attached and incorporated herein as Exhibit B.

30. Consistent with the Program Summary, no complaints or issues concerning its implementation were brought to Chief Washington's attention during Phase One of the Program.

31. Prior to March 24, 2023, Defendants did not raise any complaints or issues to Chief Washington concerning his implementation of the Program, or concerning his performance as Fire Chief.

32. On March 24, 2023, however, Defendant Long unexpectedly – and without prior warning – presented Chief Washington with a letter of termination, along with a "grab bag" of purported "charges" against him:[1]

   a. In the first charge, Defendant Long complains that Chief Washington purportedly failed to implement a "climate assessment" and subsequently failed to adequately support the efforts of Women Helping Women's WorkStrong Program.

      i. No documentation of Chief Washington's alleged failure to implement a "climate assessment" existed prior to the March 24 Letter, and the Executive Summary from Women Helping Women made no reference to a lack of adequate support from Chief Washington. In truth, Chief Washington had taken numerous steps to implement this assessment prior to his termination.

---

[1] A true and accurate copy of this letter is attached hereto as Exhibit C.

b. In the second charge, Defendant Long complains about Chief Washington's supervision during a three-alarm high-rise fire on President's Day 2023. Due to the Fire Department's rapid response, no deaths were reported despite the fire's severity. Chief Washington attended numerous fires in his capacity as Chief, and his inability to be present at this particular fire was in no way a dereliction of his duty.

c. In the third charge, Defendant Long complains about Chief Washington's insistence in adhering to the terms of a collective bargaining agreement in administering officer discipline.

d. In the fourth charge, Defendant Long bemoans Chief Washington's "acquisition of a training center" for "requiring assistance from the City Manager's office," despite claiming previously that it was her "responsibility to ensure [that] firefighters are equipped… with the best training."[2]

e. The fifth charge is a nebulous, vague, and unjustified critique of Chief Washington's communication with the City Manager's office.

33. Chief Washington was not given any prior notice of his termination, nor was he given an opportunity to be heard on the "charges" against him prior to his termination.

34. After drumming Chief Washington out of office, Defendant Long issued a memorandum to Defendant Pureval and members of City Council stating that she was terminating Chief Washington with cause, and setting forth the purported reasons therefor.

---

[2] Casey Weldon, *'It's long overdue': Cincinnati breaks ground on $13.6M consolidated fire training campus*, Spectrum News 1 (Nov. 24, 2022, 3PM), https://spectrumnews1.com/oh/columbus/news/2022/11/23/city-breaks-ground-on--long-overdue--fire-training-campus.

35. Rather than present this memorandum to Chief Washington and give him an opportunity to be heard, Defendant Long began a public relations campaign against him, immediately publishing her memorandum to the media and public.

36. Defendant Long continued this campaign in the media by making additional false statements concerning Chief Washington's conduct and termination.

37. Chief Washington had no opportunity to defend himself from these groundless and exaggerated Charges, and they did not remotely come close to giving Defendants "cause" to terminate his employment under the City Charter.

38. In this manner, Defendants abruptly, unfairly, and ignominiously ended the 30-year career of one of the City's most outstanding and dedicated public servants.

39. Defendants terminated Plaintiff almost eight years to the day from the date on which his good friend and fellow firefighter Daryl Gordon lost his life in the line of duty, working under Plaintiff's command in a Madisonville apartment building.

40. Plaintiff suffers from Post-traumatic Stress Disorder due to this incident, and each anniversary of his friend's death is an especially difficult time for him.

41. Defendants' decision to terminate Plaintiff's employment at this particular time made the experience even more devastating and traumatic.

42. At all times relevant herein, Defendants Pureval and Long were acting under color of law.

**CAUSES OF ACTION**

**Count I: 42 U.S.C. § 1983- Procedural Due Process**
**(As to Defendant City and Defendant Long in her Official and Individual Capacities)**

43. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

44. Procedural due process under the Fourteenth Amendment to the United States Constitution imposes constraints on governmental decisions which deprive individuals of property interests, including property interests they may possess in their employment.

45. At the time of his termination, Chief Washington had faithfully served the City as Fire Chief for twenty-two (22) months.

46. The Charter provides in pertinent part, "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause including incompetency, inefficiency, dishonesty, insubordination, unsatisfactory performance, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of any felony." (Ex. A, Charter Art. V, § 6).

47. Under the Charter, Chief Washington had exceeded the six-month threshold, and thus could only be lawfully removed from office for cause.

48. Chief Washington therefore had a property interest in his continued employment as Fire Chief, as provided by the Charter.

49. Chief Washington was deprived of that property interest when his employment was terminated.

50. Defendants failed to provide Chief Washington with any pre-deprivation notice or hearing prior to his termination.

51. Defendants also failed to provide Chief Washington with any meaningful post-deprivation process to challenge his termination.

52. In denying Chief Washington his right to due process of law, Defendants violated his procedural due process rights protected by the Fourteenth Amendment to the United States Constitution.

53. Defendants' above-described conduct was intentional, malicious, willful, and wanton in nature.

54. As a direct and proximate result of Defendant Long's actions, Chief Washington has suffered and is suffering damages in the manner and to the extent hereinabove described.

**Count II: 42 U.S.C. § 1983- Substantive Due Process**
**(As to Defendant City and Defendants Pureval and Long in their Official and Individual Capacities)**

55. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

56. The due process clause of the Fourteenth Amendment to the United States Constitution protects a person's reputation, good name, honor, and integrity from government deprivation. *Edelstein v. Gmoser*, 2022 U.S. App. LEXIS 24390 (6th Cir. Aug. 29, 2022).

57. Defendants' actions unfairly stigmatized Chief Washington, and deprived him of his protected interest in his good name and professional reputation.

58. Chief Washington is seeking comparable employment, but is highly unlikely to secure such a position because of Defendants' stigmatizing actions, including but not limited to the public dissemination of false statements regarding his termination, which included false and defamatory statements impugning his professional reputation.

59. Defendants' intentional, malicious, and wanton actions effectively foreclose the opportunity for Chief Washington to practice his profession by irreparably damaging his reputation within the community of first responders.

60. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and is suffering the loss of his constitutional rights, the loss of his employment, the loss of substantial wages and benefits, enormous personal anguish, and irreparable damage to his reputation.

**Count III:  42 U.S.C. § 1983 - Federal Civil Conspiracy to Violate Procedural Due Process Rights**
**(As to Defendant City and Defendants Pureval and Long in their Official and Individual Capacities)**

61. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

62. Upon information and belief, Defendants Long and Pureval conspired to deprive Chief Washington of his employment, and to deprive him thereof without any due process of law.

63. Upon information and belief, Defendants Long and Pureval conspired to manufacture bogus reasons for terminating Chief Washington, to terminate him without any prior warning, and to deny him any meaningful opportunity to defend himself or the reputation he had worked so hard for 30 years to earn.

64. Upon information and belief, Defendants Long and Pureval discussed the termination of Chief Washington prior to Defendant Long's official termination on March 24, 2023.

65. Defendants' actions were intended to circumvent their duties under the Charter, and to deprive Chief Washington of his property interest in his continued employment.

66. Defendants' above-described conduct was intentional, malicious, willful, and wanton in nature.

67. As a direct and proximate cause of Defendants' unlawful conduct, Chief Washington has suffered and is suffering damages in the manner and to the extent hereinabove described.

**Count IV: Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.**
**(As to Defendant City and Defendant Long in her Official Capacity)**

68. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

69. Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

70. The City Charter provides in pertinent part, "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause including incompetency, inefficiency, dishonesty, insubordination, unsatisfactory performance, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of any felony." (Ex. A, Charter Art. V, § 6).

71. Chief Washington served as Fire Chief for twenty-two (22) months, between May 14, 2021, and March 24, 2023.

72. Chief Washington reasonably expects Defendants to claim that he was an at will employee, or in the alternative, that alleged acts falsely attributed to him fell within the definition of "cause" as expressed in the Charter.

73. Accordingly, an actual controversy now exists between Chief Washington and Defendants concerning whether Plaintiff was terminable only for cause, what constitutes "cause" within the meaning of the Charter, and whether such "cause" existed to terminate Plaintiff.

74. Chief Washington states that Defendants violated the terms of the Charter by terminating him without cause.

75. Chief Washington is entitled to a declaratory judgement that he was only terminable for cause, as provided by the Charter, and that Defendants did not have cause to terminate him.

76. A judicial declaration is necessary and appropriate to conclusively adjudicate Chief Washington's rights.

### Count V: Violation of Ohio Const. Art. 1, §16
### Procedural Due Process
### (As to Defendant City and Defendant Long in her Official and Individual Capacities)

77. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

78. Procedural due process under the Ohio Constitution, Article I, §16 imposes constraints on governmental decisions which deprive individuals of property interests.

79. At the time of his termination, Chief Washington had served as Fire Chief for twenty-two (22) months.

80. As previously noted, the Charter provides in pertinent part, "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause including incompetency, inefficiency, dishonesty, insubordination, unsatisfactory performance,

any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of any felony." (Ex. A, Charter Art. V, § 6)

81. Under the Charter, Chief Washington could only be lawfully removed from office for cause, as he had exceeded the six-month threshold.

82. Chief Washington thus had a protected property interest in his continued employment as Fire Chief, as provided by the Charter.

83. Chief Washington was deprived of that property interest when his employment was terminated.

84. Defendants failed to provide Chief Washington with any pre-deprivation notice or hearing prior to his termination.

85. Defendants also failed to provide Chief Washington with any meaningful post-deprivation process, in violation of Chief Washington's Due Process rights under Ohio Constitution, Article I, §16.

86. In denying Plaintiff adequate pre-deprivation and post-deprivation process, Defendants violated his procedural due process rights protected by the Ohio Constitution.

87. Defendants' above-described conduct was intentional, malicious, willful, and wanton in nature.

88. As a direct and proximate result of Defendants' actions, Chief Washington has suffered and is suffering the loss of his state constitutional rights, and the other damages hereinabove described.

**Count VI: Violation of O.R.C. § 2721.01, et seq.**
**Declaratory Judgment**
**(As to Defendant City and Defendant Long in her Official Capacity)**

89. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

90. Pursuant to O.R.C. § 2721.03, "any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it."

91. As noted, the Charter provides in pertinent part, "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause including incompetency, inefficiency, dishonesty, insubordination, unsatisfactory performance, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of any felony." (Ex. A, Charter Art. V, § 6).

92. Chief Washington served as Fire Chief for twenty-two (22) months, beginning on May 14, 2021, and ending on March 24, 2023.

93. Chief Washington reasonably expects Defendants to claim that he was an at will employee, or in the alternative, that alleged acts falsely attributed to him fell within the definition of "cause" as expressed in the Charter.

94. Accordingly, an actual controversy now exists between Chief Washington and Defendants concerning whether Plaintiff was terminable only for cause, what constitutes "cause" within the meaning of the Charter, and whether such cause existed to terminate his employment.

95. Chief Washington states that Defendants violated the terms of the Charter by terminating him without cause.

96. Chief Washington is entitled to a declaratory judgement that he was only terminable for cause, as provided by the Charter, and that such cause did not exist in this instance.

97. A judicial declaration is necessary and appropriate to conclusively adjudicate Chief Washington's rights.

## Count VII: Defamation
### (As to Defendant City and Defendant Long in her Official and Individual Capacities)

98. Chief Washington incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

99. Defendant Long intentionally and knowingly made false and defamatory statements about Chief Washington, constituting defamation per se and defamation per quod.

100. The published false statements include both oral statements and written publications, which have injured Chief Washington's reputation and exposed him to public contempt, ridicule, shame and disgrace, and have adversely affected him in his profession.

101. Defendant Long published these statements to various persons, including but not limited to Cincinnati City Council and employees of the city, as well as the news media.

102. Defendant Long's false and defamatory statements include, but are not limited to, statements that Chief Washington was unable and/or unwilling to effectively operate his department, that he was incompetent, that he failed to create an inclusive environment for female firefighters, that he failed or refused to pursue culture change in his department, that he undermined the efforts of Women Helping Women, that he

disobeyed Defendant Long's orders, that he did not effectively communicate with the office of the City Manager, and that he did not fulfill the duties of his position.

103. Defendant Long published these statements negligently, recklessly, with the knowledge that they were false, and with actual malice.

104. Defendant Long's false statements impugned Chief Washington's professional reputation, reflect negatively upon his character, and have irreparably injured his profession.

105. Chief Washington suffered injury as a result of Defendant Long's false and defamatory statements, including but not limited to injuries to his reputation and livelihood.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff here by demands judgment against Defendants as follows:

1. A Declaration that the Plaintiff was only terminable for cause, and that Defendants did not have cause to terminate him;

2. Damages for all back pay, front pay, health insurance benefits, and other employee benefits lost as a result of his unlawful termination;

3. Payment of all contributions that would have been made on his behalf to the Ohio Police and Fire Pension Fund, from the date of his unlawful termination to the date of his mandatory retirement;

4. Awards of compensatory and punitive damages in amounts to be determined at trial;

5. An award of pre-judgment interest;

6. An award of reasonable attorneys' fees and costs;

7. For all other and further relief, in law or in equity, that this Court may deem appropriate.

/s/ Stephen E. Imm

Stephen E. Imm (0040068)
Matthew S. Okiishi (0096706)
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513)943-5678
(513) 943-6669 (Fax)
stephen@finnylawfirm.com
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Stephen E. Imm

Stephen E. Imm (0040068)