## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MICHAEL WASHINGTON,**

        **Plaintiff,**

    **v.**

**CITY OF CINCINNATI, OHIO,** *et al.,*

        **Defendants.**

**Case No. 1:23-cv-230**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

Plaintiff Michael Washington is the former Fire Chief for the City of Cincinnati. He has sued Defendant Sheryl Long, the City Manager of the City of Cincinnati, in her individual and official capacities as well as Defendant City of Cincinnati, Ohio (the City) asserting a handful of federal and state claims arising from the firestorm surrounding his public termination from that role. Specifically, Washington claims that (1) Defendants violated his state and federal due process rights by failing to afford him pre-termination process and (2) Long's public statements and publications immediately following Washington's termination defamed him. (Am. Compl., Doc. 7, #71–77). Defendants now move to dismiss the Amended Complaint in toto. They argue that the due process claims fail for lack of a cognizable property interest, the declaratory judgment claim is duplicative of the due process claims, Washington's defamation claim fails to state a claim for relief, and Long is immune from suit in her individual capacity. (Doc. 8, #85, 90).

As explained further below, the Court concludes dismissal is unwarranted. Washington has alleged a cognizable property interest in his employment under the City's charter, which made him removable only "for cause." Thus, Washington's due process claims and attendant demand for declaratory relief premised on the due process violations clear the 12(b)(6) hurdle. The Amended Complaint also plausibly states a claim for defamation—but Washington can proceed to the merits of this claim on only two of the allegedly defamatory statements he identifies in the Amended Complaint. Finally, Long's claims of immunity from suit in her individual capacity fall short at this stage of the litigation.

Accordingly, the Court **DENIES** Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Doc. 8).

## BACKGROUND[1]

From March 1993 until his termination on March 24, 2023, Washington served as a member of the City of Cincinnati Fire Department in various roles. (Doc. 7 ¶¶ 7, 9, 27, #63–64, 67). As relevant here, Washington's last position in the Department was as Fire Chief—a position to which he was appointed in May 2021. (*Id.* ¶ 12, #64). Washington remained in that position for almost two years, allegedly without complaint, reprimand, discipline, or similar incidents on his record. (*Id.* ¶¶ 15, 19–20, 26, #65–67). But in March 2023, Washington's career went up in smoke. Allegedly without warning, Long terminated Washington's employment via a letter of

---

[1] As this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

termination that listed several charges against him.[2] (*Id.* ¶ 27, #67). These charges asserted that Washington's termination was due to workplace culture problems, his failure to be present at a high-rise fire in February 2023, his administration of officer discipline, issues related to a newly acquired training center, and communication problems with other city officials. (*Id.* ¶ 27, #67–68; Doc. 7-3, #81–82). Washington alleges that in addition to being given no notice about any such issues with his tenure prior to receiving the letter, he was not "given an opportunity to be heard" on the charged matters. (*Id.* ¶ 28, #68). The same day, Long allegedly notified the Mayor and the members of City Council that Washington was being terminated for cause because of problems with the workplace environment, obeying orders, and fulfilling his duties. (*Id.* ¶¶ 29–30, #68–69). Further inflaming Washington, Long made the termination and reasons for her decision public via release of a written statement and

---

[2] Washington appended the alleged termination letter to the Complaint, in which letter Long asserts that she "ha[d] spoken to [Washington] regarding [his] performance several times," including of the issues prompting her to terminate his employ. (Doc. 7-3, #81). Because the letter is expressly referenced in the Complaint and is relied on for the claims Washington alleges—including claiming that the statements in the letter were actionable defamation, (Doc. 7 ¶ 83, #76)—the Court may reference this letter even on a motion to dismiss. *See Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *1 n.3 (S.D. Ohio Jan. 4, 2024). That said, Long's statement in the letter that she had conferred with Washington about the issues leading to his termination conflicts with his allegation that the termination came without warning. But the Court has an obligation to "construe[] [pleadings] so as to do justice," Fed. R. Civ. P. 8(e), and to draw all reasonable inferences in favor of Washington at this stage of the litigation, *Bassett*, 528 F.3d at 430. Considering that mandate, the Court accepts as true Washington's allegation that his termination came without warning and treats, for the purposes of resolving Defendants' motion to dismiss, Long's assertion in the termination letter to the contrary as inaccurately stating what transpired. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399–400 (6th Cir. 2012) (holding that the district court, in resolving a motion to dismiss, erroneously credited the version of disputed facts as stated in a settlement agreement—"a self-serving document drafted by the defendant"—that was incorporated by reference in the Complaint, instead of relying on the contrary narrative provided by the plaintiff's well-pleaded factual allegations).

3

a television interview. (*Id.* ¶¶ 31–39, #69–70). Washington claims Long's actions painted him (allegedly wrongfully) as "a sexist [individual] who is unfit to lead the Fire Department." (*Id.* ¶¶ 39–41, #70).

So, on April 26, 2023, Washington sued the City, the Mayor, and Long, in her official and individual capacities. (Doc. 1). Shortly after waiving service, Defendants moved to dismiss. (Doc. 4). Exercising his right to amend his pleadings once as a matter of course, Washington filed his Amended Complaint on July 21, 2023. (Doc. 7). In the Amended Complaint, Washington dropped all claims against the Mayor. Instead, Washington raised four claims for relief: two due process claims, one under the United States Constitution and the other under Ohio's, against all Defendants (Counts I, II);[3] a claim for a declaratory judgment under Ohio Revised Code § 2721.01, *et seq.*, against the City and Long, only in her official capacity, (Count III); and a claim for defamation against all Defendants (Count IV). (Doc. 7, #71–77).

On August 4, 2023, Defendants moved to dismiss the Amended Complaint. (Doc. 8). They contend that (1) Washington did not have a cognizable property interest in his position as Fire Chief, which means his due process and declaratory

---

[3] While the Court refers to these as "constitutional claims," the claim relating to the United States Constitution actually arises under § 1983, which creates the private cause of action against a person who violates federal rights when acting under the color of state law. *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *1 n.1 (S.D. Ohio Dec. 21, 2023). Further, although Defendants did not raise the issue, the Court notes that Ohio's Constitution does not create a right of action for money damages, nor is there a state law equivalent to § 1983. *Autumn Care Ctr., Inc. v. Todd*, 22 N.E.3d 1105, 1110 (Ohio Ct. App. 2014) (citation omitted). That the Due Course of Law Clause does not create an independent cause of action does not necessarily foreclose injunctive or declaratory relief—only the latter of which Washington requested in his Complaint, (Doc. 7, #77)—for violations of that constitutional provision. *Riverside v. State*, 2014-Ohio-1974, ¶¶ 31–34 (2d Dist.); *Olds v. Klotz*, 3 N.E.2d 371, 374 (Ohio 1936) (affirming the entry of injunctive relief enjoining the enforcement of a local ordinance that violated the Due Course of Law Clause).

judgment claims must fail; (2) his defamation claim fails to state a claim for relief; and (3) to the extent that the claims are not otherwise dismissed, Long, when sued in her individual capacity, is entitled to immunity from suit under state and federal law. (*Id.* at #85). Washington opposed (Doc. 10), and Defendants replied (Doc. 11).

The matter is now ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But while well-pleaded allegations are accepted as true, they are just that—allegations.

When a court analyzes a motion to dismiss, it generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, a court may take judicial notice of public records. *Bassett*, 528 F.3d at 430. And "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed.

R. Civ. P. 10(c). These "written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). "As a result, they often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.* (cleaned up). Even so, a court will not credit a document attached to a motion to dismiss that is not integral to or referenced in the complaint, *Bassett*, 528 F.3d at 430, or is otherwise unlike quintessential examples of written instruments—for example, when the exhibit is unsigned and undated (i.e., lacks "self-verifying qualities"), *CFPB v. Fifth Third Bank, N.A.*, No. 1:21-cv-262, 2023 WL 7325956, at *3–*4 (S.D. Ohio Sept. 26, 2023).

## LAW AND ANALYSIS

As a reminder, Washington's Amended Complaint raises four claims for relief (two due process claims, a claim for declaratory judgment, and a defamation claim) against two defendants—the City and Long (in both her individual and official capacities). Before diving in, a couple housekeeping items are in order.

First, an official capacity suit is the equivalent of a suit against the officer's employer. *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *5 (S.D. Ohio Dec. 21, 2023). Thus, the official capacity claims against Long, the City Manager, are effectively duplicative of the claims against the City. So the Amended Complaint levels all four claims against the City—twice over (i.e., against the City itself and

against Long in her official capacity).[4] And it levels three claims (all but Count III requesting a declaratory judgment) against Long in her individual capacity.

Second, Long claims entitlement to state and federal immunities with respect to the claims leveled against her in her individual capacity. (Doc. 8, #101–02). But that issue kicks in only if the Court finds that the applicable claim otherwise states a viable claim for relief. *Spencer v. Jordan*, No. 1:22-cv-557, 2023 WL 8455141, at *4 n.7, *5 n.8 (S.D. Ohio Dec. 6, 2023). So the Court will first assess whether any claims have a sufficient factual foundation in the Amended Complaint to state a claim for relief and then, at the end, turn to the question of immunity for any remaining claims.

With that, analysis of the claims can commence.

## A.     Counts I and II – Washington's Due Process Claims

Washington raises two due process claims—one under the Fourteenth Amendment of the United States Constitution and one under the Due Course of Law Clause found in Article 1, Section 16 of the Ohio Constitution. (Doc. 7, #71–74). But, to the extent that Washington can seek relief for a violation of the Ohio Constitution, *see supra* note 3, these two Counts essentially amount to one claim. Under Ohio law, the legal analysis under the Due Course of Law Clause is "coextensive with the Due Process clause of the Fourteenth Amendment to the United States Constitution." *State v. Anderson*, 68 N.E.3d 790, 794 (Ohio 2016). Per that standard, "[t]o state [a] procedural due process claim, Plaintiff[] must establish three elements: (1) that [he]

---

[4] As for the claims against the City, Defendants do not argue that Long's actions at issue in this Complaint should not be imputed to the City itself. As a result, in its analysis in this Opinion and Order, the Court treats the City as liable and responsible for Long's actions without opining on whether a challenge to that legal position would have merit.

ha[s] a property interest protected by the Due Process Clause; (2) that [he] w[as] deprived of this property interest; and (3) that the state did not afford [him] adequate pre-deprivation procedural rights."[5] *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019). Defendants contend only that Washington cannot satisfy the first prong of the analysis as an unclassified employee who has no property interest in his continued employment as Fire Chief.[6] (Doc. 8, #90).

The existence of property interests protected by the Due Process Clause is often measured by reference to state law—after all, property is by default a creature of state law in our constitutional structure. *Savage v. City of Pontiac*, 483 F. App'x 943, 946 (6th Cir. 2012). That said, state law is not the end-all-be-all of property interests, as "whether a substantive interest created by the state *rises to the level* of a constitutionally protected property interest is [nonetheless] a question of federal constitutional law." *Id.* (citation omitted) (emphasis added). "The hallmark of

---

[5] Although Washington's Amended Complaint makes off-hand references to a lack of "meaningful post-deprivation process" that would permit him to challenge his termination, (Doc. 7 ¶¶ 54, 66–67, #72–73), it contains no other non-conclusory allegations permitting the Court to conclude that Washington meaningfully states a claim for violations of his due process on account of Defendants' denial of post-deprivation process. *Iqbal*, 556 U.S. at 678 (holding that for a complaint to state a claim for relief, plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Accordingly, the Court deems the Complaint to have raised state and federal due process claims premised on Defendants' alleged deprivation of only pre-termination process.

[6] It was wise for Defendants to limit their argument in that manner. Any argument that Washington failed to allege that he was deprived of his alleged property interest or that he was not afforded pre-deprivation procedural rights would be a non-starter. As to the former, if Washington has a property interest in his position, firing him would constitute a deprivation. (Doc. 7 ¶ 52, #72). And Washington alleges that he was given no pre-deprivation notice or hearing (*id.* ¶ 53, #72)—thereby plausibly alleging a lack of adequate pre-deprivation process to challenge Long's termination decision. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of … property be preceded by notice and opportunity for a hearing." (cleaned up)).

property [protected by the Due Process Clause] is an individual entitlement grounded in state law, which cannot be removed except for cause." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 578 (6th Cir. 2021) (citation omitted). Naturally, this means the Due Process Clause protects property interests individuals acquire as "public employees who can [] be fired [only] for cause." *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004); *Kizer v. Shelby Cnty. Gov't*, 649 F.3d 462, 466 (6th Cir. 2011) ("[P]ublic employees … not subject to removal at will … have a state-law-created, constitutionally protectable property interest in maintaining their current employment.").

Under this caselaw, the proper question is whether the position of Cincinnati Fire Chief constitutes a public employment position for which the officeholder, here Washington, can be fired only for cause. Defendants' problem is that the answer to that question is clearly yes. The Charter of the City of Cincinnati—a matter of public record of which the Court may take judicial notice, *Fisher v. City of Cincinnati*, 753 F. Supp. 681, 689 (S.D. Ohio 1990)—plainly states that "[a]fter the fire chief has served six months, he or she shall be subject to removal *only for cause*[.]" Charter of the City of Cincinnati, Art. V, § 6 (last amended Nov. 4, 2014), https://perma.cc/FVG9-RF6A (emphasis added) (reproduced at (Doc. 7-1)). The Amended Complaint alleges Washington was in his position for nearly two years from May 2021 until March 24, 2023. (Doc. 7 ¶¶ 12, 27, #64, 67). As a Fire Chief with more than six-months' tenure, Washington was entitled to the attendant for-cause-removal protections. And under well-established caselaw, he therefore held a constitutionally protected property

interest in his continued employment. *Savage*, 483 F. App'x at 946. As this is the only challenge Defendants raise, their claim that Washington's due process claims are legally insufficient necessarily fail.

Defendants raise three arguments to the contrary. First, Defendants claim that the Charter labels the Fire Chief as an "unclassified" employee, and that this label is talismanic, thereby extinguishing any constitutional protections that may otherwise arise due to the for-cause removal provision. (Doc. 8, #91–94). Second, Defendants bewilderingly claim that the words "for cause" in the Charter do not actually mean "for cause" removal—they claim that the term "speaks only to the process to be afforded" and argue that the mere addition of that process cannot grant Washington a property right in the position. (Doc. 11, #141–47). And third, citing *Prophett v. City of Cincinnati*, No. 1:17-cv-699, 2018 WL 11473295, at *9 (S.D. Ohio Aug. 3, 2018), they argue that this district court has already determined that the Fire Chief is an at-will employee under the Charter. (Doc. 8, #92–94; Doc. 11, #143–44). None of these arguments come close.

Start with the first argument, based on the "unclassified" label. Defendants are correct that unclassified employees—a legal term of art in Fourteenth Amendment jurisprudence meaning employees who are terminable at will—generally do not obtain a property right in their continued employment because (unsurprisingly) they may be terminated at any time for any reason. *Kizer*, 649 F.3d at 466 (defining unclassified employees as those who are terminable at will and collecting cases finding at-will employees lack a cognizable property interest

protected by the Due Process Clause in their continued employment). And, yes, the Charter describes the Fire Chief as an "unclassified civil service" position "exempt from all competitive examination requirements." (Charter, Art. V, § 6, Doc. 7-1, #79). But importantly, it then goes on to state that after six months of service, the Fire Chief position becomes terminable "*only for cause*" and details what constitutes cause justifying termination. (*Id.* (emphasis added)). There is no more explicit way to designate the Fire Chief position, when held beyond six months, as a classified (in the legal-term-of-art sense of the word), for-cause-terminable position. And as Washington was a Fire Chief entitled to for-cause removal, he possessed a cognizable property right in his classified (in the legal-term-of-art sense) position protected by the Due Process Clause.

Against that backdrop, the Charter's reference to the position as "unclassified" cannot overcome the fact that, as a matter of substance, the Fire Chief has "an individual entitlement [to the position] grounded in state law, which cannot be removed except for cause." *Kaplan*, 10 F.4th at 578. As the Supreme Court has recognized across many contexts, "we must be careful to consider *the substance of the rights state law provides, not merely the labels the State gives these rights* or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property" for federal law purposes. *United States v. Craft*, 535 U.S. 274, 279 (2002); *cf. Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023) ("The Takings Clause does not itself define property. For that, the Court draws on existing rules or understandings about property rights. State law is

one important source. But state law cannot be the only source. Otherwise, a State could sidestep the Takings Clause by disavowing traditional property interests in assets it wishes to appropriate." (cleaned up)). Just the same here. The City's use of the "unclassified" label cannot overcome the core of Washington's interest in being Fire Chief, which "rises to the level of a constitutionally protected property interest." *Savage*, 483 F. App'x at 946. Simply, as a Fire Chief with an excess of six months of service, he was a for-cause employee who merits due process protections. As a result, all the cases Defendants cite finding no property interest in truly unclassified (i.e., at-will, not for-cause, positions) are inapplicable here.

What about Defendants' assertion that "for cause" in the Charter "speaks only to the process to be afforded" to an at-will employee? (Doc. 11, #144). This argument is meritless. Again, Defendants are correct that merely promising process to an employee does not create a property interest in one's continued employment if the employee remains terminable at will. *McClain v. Nw. Cmty. Corr. Ctr. Jud. Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006) ("Because McClain may be dismissed without cause, she … lacks a property interest for federal procedural due process purposes, notwithstanding the fact that state law provides her some procedural protection."). But that is not what the Charter does. The Fire Chief is terminable at will for the first six months of his tenure. Once those six months pass, the Fire Chief becomes a vested for-cause position. So, by the Charter's own terms, Washington was converted into a for-cause employee. For Defendants' theory to withstand scrutiny, the Court would need to pretend that language making the Fire Chief terminable "only for

12

cause"—followed by a list of permissible reasons justifying that termination—does not really mean terminable for cause. (Charter, Art. V, § 6, Doc. 7-1, #79). The Court will not accede to the linguistic gymnastics needed to justify that reading.

That bring us to Defendants' final argument that this district court has already interpreted the Charter to mean that the Fire Chief was an at-will employee in *Prophett v. City of Cincinnati*, 2018 WL 11473295, at *9. That is not what *Prophett* says. Rather, *Prophett* involved a due process claim brought by a former *Assistant* Fire Chief who, per the Charter, is terminable at-will and who does not expressly obtain for-cause removal protections after six months. *Id.*; *see generally* (Charter, Art. V, § 6, Doc. 7-1, #79).[7]

In sum, the City Charter gives Washington a vested, due-process-protected property interest in his continued employment as Fire Chief. So Defendants' sole argument—that he lacks such an interest—fails. And, given the noted parity between the federal and state due process protections, that means that Counts I and II of the Amended Complaint both survive Defendants' motion to dismiss.

## B. Count III – Declaratory Judgment

Next, turn to Count III of Washington's Amended Complaint, in which he requests a declaratory judgment under Ohio Revised Code § 2721.01, *et seq.* finding

---

[7] Even if *Prophett* had held that a Cincinnati Fire Chief with more than six months of service was an at-will employee, the Court would not be bound by that determination. *Gilbert v. Nat'l Emp. Benefit Cos.*, 466 F. Supp. 2d 928, 933 (N.D. Ohio 2006) ("Under stare decisis, a district court in this circuit is bound only by opinions of the U.S. Supreme Court and the U.S. Court of Appeals for the Sixth Circuit, while other authority[,] [including decisions within the same district court,] is advisory"). And considering the clarity with which the Charter establishes Washington's vested right in a for-cause employ after he satisfied the six-month service requirement, the Court would reject out of hand any authority's contrary interpretation.

that he is terminable only for cause and that his termination was made without proper cause. (Doc. 7, #74–75). Citing cases where the federal cause seeking declaratory relief was bifurcated from an underlying civil action involving largely the same claims,[8] Defendants contend this claim should be dismissed because it is already fully encapsulated by the due process claims. (Doc. 8, #94–96; *see* Doc. 11, #155–56 (arguing that "there is no useful purpose" for the declaratory judgment claim)). But Defendants misapprehend the value to Washington declaratory relief may have even if Count III is premised on the same set of facts underlying the due process claims raised in the Amended Complaint. Resolution of the due process claims against Washington would resolve only what process was owed to Washington—not whether he was properly terminated for cause. *Doe v. Cummins*, 662 F. App'x 437, 445–46 (6th Cir. 2016). And a declaration that Defendants lacked cause to terminate Washington would serve an independent purpose. It would be an arrow in his quiver tending to prove that he is entitled to compensatory, not just nominal, damages as such a determination would undermine a potential defense that the claimed due process violations wrought no harm because Washington's termination was otherwise properly justified. *Turner v. City of Lebanon*, 818 F.2d 31, No. 86-3149, 1987 WL 37383, at *3–*4 (6th Cir. May 14, 1987) (citing *Cary v. Piphus*, 435 U.S. 247 (1978), for the proposition that if a suspension without a pre-suspension hearing is proven to

---

[8] Defendants also cited *Quicken Loans Inc. v. United States*, in which the district court had dismissed all other claims in the complaint and was deciding whether to exercise jurisdiction over the sole remaining claim for declaratory relief. 152 F. Supp. 3d 938, 952–53 (E.D. Mich. 2015). But *Quicken Loans* is inapposite as the Court finds that Washington's due process claims survive dismissal, which means it need not assess whether Washington should be permitted to maintain an action with only a claim for declaratory relief.

14

be otherwise justified, the employee is entitled only to nominal damages); *cf. Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 556–57 (6th Cir. 2008) (holding that a party properly seeks declaratory relief when such relief would determine the legal or contractual validity of one party's actions with respect to the other). That suffices to permit Washington to seek declaratory relief.

None of Defendants' arguments for dismissal have merit. First, contrary to Defendants' suggestion, (Doc. 8, #96), there is clearly a concrete dispute supporting jurisdiction over Count III of the Amended Complaint, just as there is a concrete dispute over the due process claims. (*See* Doc. 7 ¶¶ 74–78, #75). Second, unlike cases in which courts were wary of resolving a declaratory judgment claim bifurcated from the rest of the dispute (usually in state court) given the risk of duplication of efforts, *see, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 784–85 (6th Cir. 2004), here, the entire dispute is contained in a single cause of action. As another court observed in a similar context, "[b]ecause the declaratory judgment and [related] claims are based on the same set of facts, it makes little sense to consider the [related] claim but decline to hear the declaratory judgment claim." *Q Holding Co. v. Repco, Inc.*, No. 5:17-cv-445, 2017 WL 2226730, at *3 (N.D. Ohio May 22, 2017). Third, while Defendants contend "there is no useful purpose in declaring whether there was cause for termination when Washington had opportunity to demand a hearing and has not alleged that he did so," (Doc. 11, #156), that argument is premised on a disagreement with the well-pleaded factual allegation that Washington "was [not] given an opportunity to be heard … prior to his termination," (Doc. 7 ¶ 28, #68). It therefore cannot be credited

on a motion to dismiss. Fourth, for the same reasons stated above, Defendants' arguments that dismissal is proper because Washington's due process claims fail to state claims for relief lack merit. (Doc. 11, #155; *see also* Doc. 8, #95). And finally, Defendants' last theory in favor of dismissal—that permitting the declaratory judgment claim to proceed to the merits is the equivalent of entering judgment in Plaintiff's favor on that Count, (Doc. 11, #156 (arguing that the Court "would be forced to [assess the merits of the claims] in the absence of a developed record[,]" so "[t]here is no useful purpose in issuing a declaratory judgment at this juncture"))— does not move the needle. The Court has merely found that the well-pleaded allegations raise plausible due process claims—it has not determined that Washington is *actually* entitled to relief (declaratory or otherwise). So Count III survives dismissal.

## C.  Count IV – Defamation

On to Washington's defamation claim. Under Ohio law, to state a claim for defamation, Washington needs to allege sufficient factual details plausibly to suggest that Defendants made "(1) a false statement of fact, (2) that was defamatory, (3) that was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite intent in publishing the statement." *Green v. Mason*, 504 F. Supp. 3d 813, 829 (S.D. Ohio 2020). Whether the complained-of statements are actionable is a legal question for the Court to decide. *Id.* Because Washington was Fire Chief—a public-facing governmental role— and all the statements alleged to be defamatory related to his work in that role,

Washington constitutes a public official for defamation purposes. *Cf. Henry v. Collins*, 380 U.S. 356, 357 (1965) (treating the Chief of Police as a "public official" in a defamation action). For a public official, like Washington, to succeed on his defamation claim, he must prove that the defamatory statements were made with "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

Washington's Amended Complaint identifies several statements as defamatory[9]: (1) Long's termination letter, (2) Long's memorandum to the Cincinnati Mayor explaining her termination decision, (3) Defendants' public statement about Washington's termination, and (4) Long's television interview the same day regarding Washington's termination.[10] (Doc. 7 ¶¶ 27, 30, 33, 36, #67–69; Docs. 7-3, 7-

---

[9] Contrary to Defendants' claim, there is not a single allegation in the Complaint that directly refers to a so-called "Charge Letter." (Doc. 8, #97). So not only is the document (attached as an exhibit to Defendants' Motion) that purports to be that so-called "Charge Letter" not properly considered at this stage of the litigation (it is unsigned, not on official letterhead, and otherwise lacks "verifying attributes" akin to other valid written instruments that can be considered even when they are outside the Complaint), *Fifth Third Bank*, 2023 WL 7325956, at *3–*4, but it also cannot reasonably be considered incorporated by reference in the Complaint—let alone referenced at all. *Bassett*, 528 F.3d at 430.

[10] As noted above, the Court may review the alleged actionable defamation itself whether or not it is attached to the Complaint, so long as there is no reasonable dispute over the veracity of the document itself. *See supra* note 2; *Anderson*, 2024 WL 51255, at *1 n.3. That means, the Court may review the contents of Long's termination letter (Doc. 7-3) and Long's memorandum to the Mayor (Doc. 7-4). Whether the Court may consider the exhibit attached to Defendants' Motion purporting to be the press release Washington alleges is defamatory is a close question. The document is dated, has the City of Cincinnati's logo, and looks like a standard press release. (*See* Doc. 8-4, #115–16). But the Court could not find the statement itself on the City's website, as Defendants suggested, *CFD Responsive Documents*, City of Cincinnati (last visited Jan. 23, 2024), https://perma.cc/2JMM-S9MX (stating that "th[e] page is currently unavailable"), and Washington has not conceded that the exhibit Defendants cite is in fact the statement to which he refers. *Cf. Fifth Third Bank*, 2023 WL 7325956, at *3–*4 (declining to consider a document attached as an exhibit filed in addition to the answer because it "contain[ed] few verifying attributes" and risked "unfair surprise" to the plaintiff who might wish to challenge the document by "supplement[ing] his … complaint with rebuttal evidence"). All the same, the Court need not resolve that issue. That is because

4). Defendants object that none of these statements constitute actional defamation because they contend that (1) some of the statements constitute non-actionable statements of opinion, (2) some lack sufficient factual context to assess whether they are false or defamatory, and (3) Washington has not alleged actual malice.

For all four allegedly defamatory statements, publication is easily satisfied. All the allegedly defamatory statements, whether posted on the City's website or reported via television interviews, were published to the public and to the Mayor via several media formats. (*Id.* ¶¶ 29, 32–33, 35–36, #68–69). So that leaves whether the statements were false, defamatory, injurious, and made with actual malice.

### 1. Falsity

Start with falsity. Under this prong of the defamation analysis, the Court must assess whether the statement is one of fact or one of opinion. *Mehta v. Ohio Univ.*, 958 N.E.2d 598, 608 (Ohio Ct. App. 2011). This requires the Court to ask "whether a reasonable reader will perceive the statement as a fact or an opinion," *id.*, and requires the Court to assess "the specific language used, whether the statement is

Washington's Complaint makes clear he objects to only one statement in that release: "Long['s] state[ment:] 'I want to be clear that I do not tolerate discriminatory, hostile, or unfair working environments in any City department.'" (Doc. 7, ¶ 33, #69). So the Court will consider only whether that statement is defamatory. For similar reasons, while the Court would likely be permitted to review the YouTube video purporting to be Long's television interview with WLWT5 that Washington claims is defamatory, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017), the Court will confine its review only to the two statements expressly detailed in the Complaint that spark Washington's ire: Long's assertion that "she 'does not put up with discriminatory, disrespectful, or unfair working environments'" and that Washington was given "a resource and a tool to help reset the culture of the department and he did not take that seriously," (Doc. 7 ¶¶ 36–37, #69–70). *See Richard v. Watkins*, No. 18 C 06517, 2019 WL 6487379, at *5 n.5 (N.D. Ill. Dec. 3, 2019) ("[The] complaint also contains a link to the video … [but] [t]he court will not take upon itself the obligation to watch the video and interpret its import" outside of those allegations in the complaint itself.).

verifiable, [and] the general context of the statement," *Vail v. the Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 282 (Ohio 1995). Each of the statements Washington highlights in the Amended Complaint is assessed in turn.

Long's termination letter constitutes a falsifiable statement of fact. To begin, a letter of termination is the type of context in which assertions about those facts motivating the letter itself are taken seriously as objective descriptions of what happened. *Cf. Mehta*, 958 N.E.2d at 611–12 (finding a press release about allegations of plagiarism likely to be treated as carefully constructed objective report rather than a statement of opinion). After all, Long sought to explain the cause justifying her for-cause removal decision—that evokes a sense of formality and would lead a reader reasonably to trust the letter's contents as being recitations of facts, not opinions. Admittedly, Long peppered the letter with some of her opinions of Washington. But given its purpose is to explain the termination, the letter is naturally framed to "imply that [Long] has first-hand knowledge [of the events disclosed] t[o] substantiate[] the opinions [s]he asserts." *Vail*, 649 N.E.2d at 186. For example, Long claims that Washington did not implement a workplace culture plan, blamed staff for the failure to do so, and had taken no actions regarding workplace culture, (Doc. 7 ¶ 27, #67; Doc. 7-3, #81)—all verifiable statements that either did or did not happen. Similarly, Long asserts that Washington blamed subordinates for his failure to be present for a fire and disobeyed directives regarding disciplining a subordinate by not contacting an HR director and not involving Long in the determination of what discipline was appropriate. (Doc. 7 ¶ 27, #67–68; Doc. 7-3, #81–82). Again, one could prove whether

these events did or did not happen. Long's gloss on these actions (or inactions) as creating the impression of incompetence and mismanagement might alone constitute protected opinion. But when made in a formal termination letter in connection with concrete examples supposedly justifying her opinion, the statements are legally verifiable and therefore falsifiable. *Mehta*, 958 N.E.2d at 609.

This analysis compels the same result for Long's memorandum to the Mayor explaining her termination decision. A review of the letter reveals specific examples of misconduct (e.g., "multiple women have come forward with concerns about the workplace environment," Washington "never moved forward" with the climate assessment) that support her bottom-line conclusion that "Washington has proven to be an ineffective leader who is unwilling to take ownership for his decisions." (Doc. 7-4, #83). And just as before, the verifiable actions alleged to have occurred anchor the statements of opinion and thereby support the Court's conclusion that the statement is actionable. In context, Long's memorandum (incidentally labeled "For Your Information") purports to represent to the Mayor exactly what happened with Washington to explain why she took the action that she did. *Mallory v. Ohio Univ.*, 2001-Ohio-8762, at *5–*8 (10th Dist.) (holding that statements made by an employee of the defendant in an article, which implied that she was privy to specific details of a sexual assault the plaintiff allegedly perpetrated, constituted actionable defamation, even though the statements were surrounded by the occasional opinion statement). And that the letter was written to provide context and to explain Long's

actions means a reader would reasonably conclude that Long was reporting the facts as they happened, not peddling her opinion. *Mehta*, 958 N.E.2d at 611–12.

The same cannot be said about either the excerpts from the press release statement or those from Long's interview with WLWT5 to which Washington objects. Start with Long's assertion in the press release that "I want to be clear that I do not tolerate discriminatory, hostile, or unfair working environments in any City department." (Doc. 7 ¶ 33, #69). While the statement (given its context in a press release about Washington's termination) implies Long believes Washington created a hostile workplace environment to which she objects, it is clearly a statement of opinion. Long frames the entire statement about her views of the world and the proper functioning of a City departments, (*id.* ("I do not tolerate …")). *Scott v. News-Herald*, 496 N.E.2d 699, 707–08 (Ohio 1986) (explaining that general statements outlining a person's belief as to the ideal characteristics of an employee in a workplace paired with language equivalent to "I think" strongly suggest the statement is one of opinion rather than fact). Without any additional meaningful allegations about other statements made in the press release, the lack of any reference to Washington in the sentence reinforces the Court's conclusion that Long asserted an opinion—not a statement of fact. *See Vail*, 649 N.E.2d at 186 (concluding that a value-laden statement that creates only a veiled suggestion that its subject is mendacious is properly deemed a statement of opinion, not of fact).

And Long's assertions during her television interview that "she 'does not put up with discriminatory, disrespectful, or unfair working environments'" and that

21

Washington was given "a resource and a tool to help reset the culture of the department and he did not take that seriously" likewise are quintessential examples of statements of opinion. (Doc. 7 ¶¶ 36–37, #69–70). They again speak to Long's view of the ideal workplace and describe a nebulous perception she has that Washington was not "serious" about workplace culture. *Rothschild v. Humility of Mary Health Partners*, 840 N.E.2d 258, 266 (concluding that a description of a doctor as "lazy" is a standardless descriptor that is not verifiable or "amenable to objective proof or disproof"). Again, without additional factual context grounding these assertions— assertions that are not themselves verifiable—the objected-to statements are merely non-actionable opinion statements. *See Vail*, 649 N.E.2d at 186.

So Washington has plausibly alleged that Long's termination letter and memorandum to the Mayor are potentially actionable statements of fact. And he has rounded out this element of his defamation claim by alleging that the statements are false. (Doc. 7 ¶ 84, #76). Namely, Washington concretely alleges that (1) having not been previously warned about the stated reasons he was relieved of duty, he was blindsided by his termination; (2) there was no documentation substantiating Long's claim that Washington failed to implement a workplace culture program regarding violence against women in the workplace; (3) he had not disobeyed Long's orders; and (4) there had never been any accusation that the Fire Department was an unfit workplace environment under Washington's watch, (*id.* ¶¶ 19–20, 26–27, 30, 34, 83– 84, #65–69, 76). These well-pleaded factual details permit the Court to draw the reasonable inference that Long's statements are in fact false.

Defendants object that the letter and the memorandum are not falsifiable by highlighting only the stray assertions of opinion in those documents and by claiming that Long's publishing all relevant facts means she must have been stating an opinion. (Doc. 8, #99–100; Doc. 11, #150 (arguing that "[t]he only logical inference to be drawn from" Long's public disclosure of all documents supporting her statements is that her statements were opinions because she "had no additional undisclosed facts to support her opinion")). Neither objection has merit.

Defendants err when they fixate on the occasional statements of opinion in Long's letter and memorandum. That disregards the several factual assertions about what actions Washington did or did not take in his role as Fire Chief Long used to ground her conclusions about Washington's character and capability as a leader at the helm of the Fire Department. *Mehta*, 958 N.E.2d at 609–10 (explaining that when opinion statements or conclusions are tied to verifiable assertions about what events took place the statements are likely to be actionable because the author implies that his personal knowledge of those events can be measured against reality).

Defendants also misapprehend the import of Long's disclosure of all relevant facts. A statement falsely describing a stop sign as blue, when in actuality it is red, would be no less false even though the author provided the reader with all necessary detail about the location of the street corner, what houses were in the area, and what angle you needed to look at the sign to see what color it was. Disclosure of all relevant facts is not indicative of opinion—after all, the disclosing party could just as easily lie about those details. The cases Defendants cite merely explain that when an author

23

implies he has no special knowledge or first-hand experience with the relevant events he is describing, a reader will "normally presume that there is no specific factual content to support the statement." *Rothschild*, 840 N.E.2d at 266. In contrast, Long's statements in her letter and memorandum evince personal, intimate knowledge with the factual situation she describes. She "represents that [s]he has private, first-hand knowledge which substantiates the opinion [s]he expresses." *Scott*, 496 N.E.2d at 707 (citation omitted). And that personal knowledge lends credence to the validity of her statements of fact and corresponding gloss on how to interpret Washington's alleged actions—hence, why courts treat such statements as actionable. *Id.* (explaining that such opinions grounded in assertions of fact premised on specialized first-hand knowledge are "as damaging as an assertion of fact" (citation omitted)).

Because Defendants' objections to the termination letter and memorandum to the Mayor fail to persuade that such statements are not falsifiable, both remain as potentially viable actionable statements to support Washington's defamation claim.[11]

---

[11] Washington's briefing makes general arguments that all statements are verifiable and are made in a context where the recipient would understand Long to be making assertions of fact. (*see* Doc. 10, #128–30). Yet Washington at no point attempts to explain why the allegations actually in his Complaint provide sufficient context for the Court to conclude that the objected to statements in Long's press release and her interview with WLWT5 constitute verifiable, actionable statements. That is fatal to Washington's arguments. And as noted above, the Court declines to do its own independent review of the full interview to hypothesize about what else Washington deems objectionable, *see supra* note 10—it is not for the Court to conjure up the relevant details to fabricate a claim for the plaintiff. *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 498 & n.7 (6th Cir. 2023) ("This would be a different case if, for example, additional facts were alleged … . But as befits this stage of the litigation, our review is confined to the allegations *as they appear in the complaint*." (emphasis added)).

### 2. Defamatory

Next, the Court must assess if the statements are defamatory. "A statement is defamatory if it reflects injuriously on a person's reputation, or exposes a person to public hatred, contempt, ridicule, shame or disgrace, or affects a person adversely in his or her trade, business or profession." *Holtrey v. Wiedeman*, 221 N.E.3d 284, 295 (Ohio Ct. App. 2023) (cleaned up). Defendants do not argue that either the termination letter or the memorandum to the Mayor is not defamatory. (*See* Doc. 8, #99–100). And it is easy to see why. A review of the assertions about Washington's refusal to support workplace culture and initiatives related to women in both the letter and the memorandum reasonably suggest to the reader that he should conclude that Washington could not be bothered to contain the hostility and sexism allegedly running rampant in the Fire Department. (Doc. 7-3, #81; Doc. 7-4, #83). Similarly, Long's statements detailing his failure to manage the Fire Department effectively, to take responsibility as a leader, and to follow orders all suggest Washington was an incompetent and incapable leader. (Doc. 7-3, #81–82; Doc. 7-4, #83). Those personal and professional attacks culminating in Washington's termination are defamatory. *Knowles v. Ohio State Univ.*, 2002-Ohio-6962, ¶¶ 25–26 (10th Dist.) (concluding that statements about the vice provost of the defendant university that claimed he mismanaged the office and had harassed individuals associated with the school, were defamatory as they "tend[ed] to injure plaintiff's professional reputation"). So this element is easily met by the two actionable statements alleged in the Amended Complaint.

### 3.    Injurious

Though Defendants do not contest that Washington has sufficiently alleged that he was injured or suffered damages as a result of the statements Long made, the Court notes, for the sake of completeness, that Washington was clearly harmed by the statements. As explained above, taking the Amended Complaint in the light most favorable to Washington, Long's statements are defamatory because they plainly characterize him as not only an incompetent and incapable Fire Chief, but as one who permitted a sexist and hostile work environment to persist. (Doc. 7 ¶¶ 38–39, 84, #70, 76). And considering Long's termination letter and memorandum to the Mayor were written for the purpose of putting the nail in the coffin of Washington's career at the Fire Department in the eyes of his superiors (as well as the general public), the plain meaning of these defamatory statements necessarily "tend[ed] to injure [Washington] in his trade or occupation." *Holtrey*, 221 N.E.3d at 295 (cleaned up). Under Ohio law, such public statements marring Washington's reputation and intending to invoke derision are categorized as defamatory per se—actionable statements for which "damages are presumed." *Id.* at 296; *Knowles*, 2002-Ohio-6962 at ¶ 24 (defining defamation per se as statements "of such a nature that courts can presume as a matter of law that they tend to degrade or [to] disgrace the person of whom they are written or spoken, or [to] hold him up to public hatred, contempt or scorn" (citation omitted)). So this element is satisfied for the actionable statements alleged.

### 4. Actual Malice

That leave actual malice. The Supreme Court has defined actual malice as publication "with knowledge that [the defamatory statement] was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. This element, especially in light of this Court's finding that the two actionable statements are alleged to be false statements of fact, is easily inferred from the Amended Complaint. Everything encompassed in Long's statements in her termination letter and memorandum to the Mayor would be directly within her knowledge. Namely, the defamatory statements spoke to interactions between Washington and Long or Washington and her office, the latter of which would have affected Long's day-to-day duties (e.g., her office's aiding the acquisition of a new fire department training center or her staff's inability to contact Washington, (Doc. 7 ¶ 27, #67–68)). As a result, it is "at least plausible that [Long]'s statements about [Washington]'s conduct, if in fact false, were knowingly so. The allegations of knowing falsity thus create the plausible inference of actual malice[.]" *Green*, 504 F. Supp. 3d at 832.

Defendants object that Washington's Amended Complaint contains only the conclusory allegation that Long published the statements maliciously. (Doc. 11, #148 (citing Doc. 7 ¶ 85, #76)). It is true that Washington includes a conclusory allegation about Long's state of mind. But, as noted above, the allegedly defamatory statements themselves relate to and suggest Long's personal knowledge of Washington's actions. And that permits the Court to draw a reasonable inference that, if the assertions are

proven to be false, they were made knowingly so. *Green*, 504 F. Supp. 3d at 832. That is more than enough to make out the final element of Washington's defamation claim.

*     *     *

Putting that all together, it is clear Washington has plausibly alleged a defamation claim to the extent that it is based on the only two actionable statements alleged in the Amended Complaint—Long's termination letter and her memorandum explaining the termination decision to the Mayor. So the Court also concludes that Washington's defamation claim survives dismissal.

### D. Immunities

As the Court's analysis has made clear, all four claims Washington raises are viable despite Defendants' arguments that they failed to state a claim for relief (which means those claims as raised against the City and Long in her official capacity will not be dismissed). But that leaves one smoldering legal issue: whether Long is immune to the individual-capacity claims. Those claims, which otherwise state a claim for relief, are the two due process claims (Counts I, II), and the defamation claim (Count IV). (Doc. 7, #71–74, 75–77). Defendants claim Long is entitled to both qualified immunity and immunity under Ohio Revised Code § 2744.03. But as Washington rightly points out, qualified immunity can apply (if Long is entitled to it at all) only to the federal due process claim brought under § 1983. *Williams v. Godby*, 732 F. App'x 418, 424–25 (6th Cir. 2018). And similarly, Washington rightly observes that Ohio's state law immunity cannot prevent Long's liability for his federal law claim. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).

So the Court evaluates whether Long is entitled to qualified immunity for Washington's federal due process claim. And then it turns to whether Long is immune under Ohio law from the state due process and defamation claims.

### 1.    Qualified Immunity

When a defendant raises a qualified immunity defense at the motion-to-dismiss stage, "a plaintiff must plausibly allege facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (cleaned up). "This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored." *Id.* Washington has more than satisfied this standard here. As explained above, Washington has plausibly alleged that Long violated his due process rights by terminating him from his for-cause position as Fire Chief without a pre-termination hearing. *See supra* Part A. That is enough for the first prong of the qualified immunity analysis. And the right is clearly established because this is a simple application of the consistent line of cases recognizing that "[f]or public employees who can only be fired for cause, the Supreme Court has held, specifically, that a pretermination proceeding is required." *Farhat*, 370 F.3d at 595. Given Washington was a public employee removable only for cause, Long's decision to end Washington's employment allegedly without notice or a hearing flouted clearly established Sixth Circuit and Supreme Court precedent. Qualified immunity is improper at this stage of the litigation.

Defendants' arguments to the contrary do not carry the day. Defendants first contend that Washington fails the first prong of the qualified immunity analysis because the Amended Complaint fails to state a viable due process claim for relief. (Doc. 8, #101). But that merely reiterates arguments the Court rejected above. *See supra* Part A. Defendants' second argument fares no better. Defendants argue that the right at issue is not clearly established because their (erroneous) interpretation of *Prophett* supports their (mistaken) contention that Washington had no property interest in his continued employ as Fire Chief. (Doc. 11, #153). As explained, *Prophett* involved an assistant fire chief who was not afforded the for-cause removal protections to which Washington was entitled. *See supra* Part A. That renders *Prophett* inapposite on the facts here, not only on the merits but also as to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (requiring cases proffered as factually analogous "to speak [] to the specific circumstances" at bar for the clearly established prong of qualified immunity).

So qualified immunity is no bar to Washington's federal due process claim against Long in her individual capacity. That claim survives dismissal.

### 2.      State-Law Immunity

Under state law, city employees are immune from liability "unless (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities, (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner, or (c) liability is expressly imposed upon the employee by another section of the Revised Code."

*Copeland v. Cincinnati*, 825 N.E.2d 681, 685 (Ohio Ct. App. 2005) (citing Ohio Rev. Code § 2744.03(A)(6)). Long was acting as a city employee—exercising her authority as City Manager to act with respect to a subordinate, the Fire Chief. (Doc. 7-4, #83 ("As City Manager …")). And Washington's claims arise under the Ohio Constitution (due process) and Ohio common law (defamation), rather than the Ohio Revised Code. So Long is immune from suit unless her actions were taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b).

Taking the allegations in the light most favorable to Washington, he has sufficiently alleged Long's state of mind to overcome state-law immunity. As for his termination without due process, Washington alleges he was afforded none of the required process—notice or a termination hearing. (Doc. 7 ¶ 65, #73). And this deprivation occurred despite Long's acknowledgment that Washington was not permitted to be removed save for cause and an opportunity to be heard. (Doc. 7-3, #82 (acknowledging in the termination letter that "[p]er the language in the City Charter, [Washington] ha[d] the right to demand … an audience with [Long] to [air] [his] defense"); Doc. 7-4, #83 ("I terminated Michael Washington's employment with the City of Cincinnati, for cause.")). Long's express knowledge of Washington's due process rights and direct disregard for those rights lays a sufficient foundation from which the Court may reasonably infer that Long acted maliciously and in bad faith.[12]

---

[12] Recall that Long's assertions in her letter that she afforded him both notice (i.e., "I have spoken to you … several times.") and the opportunity to be heard (i.e., "you have the right to demand … an audience"), (Doc. 7-3, #81–82), will not be credited as proof that Washington was in fact given notice and a hearing. *See supra* note 2; *Mediacom Se.*, 672 F.3d at 399–400. Rather, those assertions are best understood on a motion to dismiss as representations Long

*Copeland*, 825 N.E.2d at 685–86 (concluding that employees were not immune from suit given the allegations of recklessness—the employees were alleged to have failed to prevent sexual assault of a child despite prior knowledge that the child had special needs and had faced abuse before). And with respect to the allegedly defamatory statements in the termination letter and the memorandum to the Mayor, the Court already determined that the Amended Complaint plausibly alleges that the statements were made with actual malice. *See supra* Section C.4. Based on Washington's allegations, Long claimed that certain events, of which she would have had personal knowledge, happened when they did not. (Doc. 7 ¶ 84, #76). And this express disregard for the truth, of which she was aware, lays a proper evidentiary foundation from which to infer Long's bad faith and malice—she allegedly tarnished Washington's public reputation and used false assertions about his supposed misconduct as a basis to remove him from his post. *Morelia Grp.-DE, LLC v. Weidman*, 2023-Ohio-386, ¶¶ 29–33 (1st Dist.) (explaining that "malice" in § 2744.03(A)(6)(b) is defined as intentionally harming another via unlawful conduct).

As with their objection to whether Washington had sufficiently alleged actual malice, *see supra* Section C.4, Defendants disagree with this outcome by arguing that Washington's Amended Complaint contains only the conclusory allegation that Long's actions were malicious. (Doc. 11, #154 (citing Doc. 7 ¶¶ 68, 85, #73, 76)). The Court repeats what it explained above. It is true that Washington includes conclusory

---

made to justify her actions despite not having acted as she claimed she did. A different rule of decision would permit any public employer to immunize itself from suit simply by claiming in a self-serving termination letter (without additional substantiation) that the terminated employee's rights were not violated during the termination process.

allegations about Long's state of mind. But, as explained in detail, there are other, non-conclusory factual allegations from which Long's malice may be inferred—allegations that Long (1) expressly disregarded Washington's due process rights by acknowledging the procedures required for termination but not providing them and (2) published false statements despite her personal knowledge that the contrary occurred. Those allegations suffice for Washington to overcome the state-law immunity question at the motion-to-dismiss stage.

Simply, Long's claim that she is immune from the state-law claims leveled against her in her individual capacity also lacks merit at this stage of the litigation. Thus, neither state law claim (defamation or due process) will be dismissed.

## CONCLUSION

Washington has validly pleaded claims for state and federal due process violations, defamation, and entitlement to declaratory relief. Furthermore, based on the allegations in the Amended Complaint, Long cannot rely on either qualified or state-law immunity to extinguish the individual-capacity claims against her. Accordingly, the Court **DENIES** Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Doc. 8).

     **SO ORDERED.**

February 7, 2023
**DATE**

     **DOUGLAS R. COLE**
     **UNITED STATES DISTRICT JUDGE**