**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 13, 2026

Mr. William Christopher Hicks
City of Cincinnati
Law Department
801 Plum Street, Suite 214
Cincinnati, OH 45202

Mr. Stephen E. Imm
Ms. Samantha B. Isaacs
Mr. Matthew S. Okiishi
Finney Law Firm
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, OH 45245

Mr. Matthew Jacob Slovin
4135 Taylor Avenue
Cincinnati, OH 45209

    Re: Case No. 25-3692, *Michael Washington v. City of Cincinnati, OH, et al*
        Originating Case No. 1:23-cv-00230

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                    Yours very truly,

                    Kelly L. Stephens, Clerk

                    Cathryn Lovely
                    Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MICHAEL WASHINGTON,

      *Plaintiff-Appellee*,

    *v.*

CITY OF CINCINNATI, OHIO; SHERYL LONG, individually and in her official capacity as City Manager of the City of Cincinnati,

      *Defendants-Appellants*.

No. 25-3692

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:23-cv-00230—Stephanie K. Bowman, Magistrate Judge.

Argued:  March 19, 2026

Decided and Filed:  August 13, 2026

Before:  STRANCH, READLER, and BLOOMEKATZ, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Matthew T. Crawford, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellants. Stephen E. Imm, FINNEY LAW FIRM, LLC, Cincinnati, Ohio, for Appellee.  **ON BRIEF:** Matthew T. Crawford, William C. Hicks, Matthew Slovin, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellants.  Stephen E. Imm, Matthew S. Okiishi, Samantha B. Isaacs, FINNEY LAW FIRM, LLC, Cincinnati, Ohio, for Appellee.

     STRANCH, J., delivered the opinion of the court in which BLOOMEKATZ, J., concurred.  READLER, J. (pp. 18–26), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

JANE B. STRANCH, Circuit Judge.  This procedural due process case concerns the discharge of a public employee by a government official.  Michael Washington, a longtime employee of the Cincinnati Fire Department, was promoted to Fire Chief in 2021.  Around two years later, he was terminated from this position with no opportunity for a pretermination hearing.  Washington sued the City of Cincinnati and the City Manager, Sheryl Long, for violations of his federal and state procedural due process rights, as well as defamation under Ohio state law.  At summary judgment, the district court held that Long was not entitled to qualified immunity for pre-deprivation violations of Washington's procedural due process rights, and that she was not entitled to statutory immunity for the defamation claim.  Long and the City filed this interlocutory appeal challenging both denials of immunity.  For the following reasons, we **AFFIRM**.

## I.  BACKGROUND

Washington began working for the City of Cincinnati Fire Department in 1993.  In May 2021, he was promoted to Fire Chief.  The Cincinnati City Charter (the "Charter"), per a 2001 amendment, contains the following language governing the Fire Chief position:

> The positions of fire chief and assistant fire chief shall be in the unclassified civil service of the city and exempt from all competitive examination requirements. . . . The fire chief may be removed at any time by the city manager.  After the fire chief has served six months, he or she shall be subject to removal only for cause including incompetency, inefficiency, dishonesty, insubordination, unsatisfactory performance, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of any felony.  If removed for cause the fire chief may demand written charges and the right to be heard thereon before the city manager.  Pending the completion of such hearing the city manager may suspend the fire chief from office.

Charter of the City of Cincinnati, Art. V, § 6.  When Washington was promoted to Fire Chief, he signed a memorandum titled "Understanding of Unclassified Appointment" (the "MOU"), which provides, in full, as follows:

No. 25-3692 *Washington v. City of Cincinnati, et al.* Page 3

> The position of Fire Chief is an unclassified position.
>
> Employees accepting employment in unclassified positions serve at the pleasure of the appointing authority and can be dismissed from employment without cause at any time. In addition, unclassified employees are not recognized under the Civil Service system and are, therefore, not afforded civil service protections and/or hearings granted to classified employees. In accepting unclassified appointments, employees forfeit the right to seek other employment via lateral transfers and the opportunity to take competitive, promotional exams.
>
> By signing below, I, Michael A. Washington, Sr., understand that the position of Fire Chief, which I am accepting, is an unclassified position and that I have read and understand the explanation of unclassified positions detailed in this document.

R. 40-2, Exhibit A, PageID 1764.

On March 24, 2023, Washington was called to a meeting at City Hall, where Long, accompanied by two Human Resources representatives, told him that he was being terminated, effective immediately. Long then handed him a termination letter. The letter began with an excerpt of the Charter language providing that "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause," then provided five reasons for Washington's termination: (1) poor workplace culture under his leadership, (2) that he was absent from a high-rise fire, (3) that he mishandled personnel matters when a lieutenant was charged with assault, (4) that he mismanaged the acquisition of a new training facility, and (5) ineffective communication with Long and others. After the meeting, Long informed the Mayor and members of the City Council that Washington had been terminated for cause, listing her reasons for terminating him in a memorandum titled "For Your Information." On the same day, Long notified local media outlets of Washington's termination by providing a copy of the termination letter and making statements in interviews consistent with the letter and memorandum. Washington subsequently requested a post-termination hearing before a neutral decisionmaker, and Long and the City responded by offering him a hearing before Long. No post-termination hearing took place.

Long testified at deposition that she consulted with HR and the legal department prior to terminating Washington. Regarding the legal department, Long stated, "[t]hey were aware that—when I let them know that I was going to make that decision, they told me that he was

No. 25-3692                *Washington v. City of Cincinnati, et al.*                Page 4

having a hearing—that he would need a hearing."  R. 36, Long Depo., PageID 1209.  When asked why she "didn't . . . let him have a hearing before [she] fired him," Long replied, "[b]ecause that was my choice to not."  R. 36, PageID 1217.

Washington sued Long and the City, alleging procedural due process violations and defamation under Ohio state law.  The parties filed cross-motions for summary judgment, and the district court determined in relevant parts (1) that "Long and the City failed to provide Washington with adequate pretermination procedural due process when they terminated him on March 24, 2023"; (2) that there were triable issues of fact regarding "the adequacy of the post-termination process and whether Plaintiff waived his post-termination hearing"; (3) that Long is not entitled to qualified immunity for the pre-deprivation due process violation, but she is entitled to qualified immunity insofar as to any defects in post-termination process afforded to Washington; and (4) that there were triable issues of fact regarding whether Long's allegedly defamatory statements about Washington were false and, if they were, whether she published them with bad faith or actual malice.  R. 47, PageID 1982–83.  In this interlocutory appeal, Long and the City challenge the district court's holdings denying both qualified and statutory immunity to Long.

## II.  LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material when it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  At the summary judgment stage, courts must view the record evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party.  *See Chapman v. UAW Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc).  A district court's summary judgment decision is reviewed de novo.  *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).

No. 25-3692                    *Washington v. City of Cincinnati, et al.*                    Page 5

### III.  ANALYSIS

Long and the City appeal (1) the district court's partial denial of qualified immunity to Long for the due process claim and (2) its denial of statutory immunity to Long on the defamation claim.  Washington argues the court lacks appellate jurisdiction over both issues. Because whether there is jurisdiction on an interlocutory basis depends on the context in which a defendant seeks to appeal an immunity decision, we will address jurisdiction separately for each issue.

### A.    Long's Assertion of Qualified Immunity for the Due Process Claim

####     1.        Jurisdiction

Under 28 U.S.C. § 1291, courts of appeals have jurisdiction to hear appeals from "all final decisions of the district courts."  Because a district court's "denial of summary judgment is not a final decision, it ordinarily is not appealable," *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018), meaning a party to whom summary judgment is denied must ordinarily proceed to trial and await a final judgment before seeking appellate review.  An exception to the final judgment rule exists under the collateral order doctrine, which "permits interlocutory appeals of orders that (1) are conclusive on the questions they decide, (2) resolve important questions separate from the merits, and (3) are effectively unreviewable if not addressed through an interlocutory appeal."  *Estate of Lewis v. City of Columbus*, 158 F.4th 814, 820 (6th Cir. 2025) (citation modified).

At summary judgment, a government official is entitled to qualified immunity "when, viewing the facts in the light most favorable to the plaintiff, the challenged conduct did not violate clearly established constitutional rights of which a reasonable person would have known." *Gillman v. City of Troy*, 126 F.4th 1152, 1158 (6th Cir. 2025) (citation modified).  A district court's denial of qualified immunity "can—in some circumstances—be reviewed on an interlocutory basis under the collateral order doctrine" "because qualified immunity involves immunity from suit, not just from liability."  *Id.*

When there is appellate jurisdiction over an interlocutory appeal from a denial of qualified immunity, however, that jurisdiction exists only "to the extent that [the appeal] turns on an issue of law," *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); there is no jurisdiction "where the officer's appeal is based on a quarrel with the plaintiff's record-supported facts," *Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024).  Or as the Supreme Court put it in *Johnson v. Jones*, jurisdiction in such appeals must be "limited to cases presenting neat abstract issues of law." 515 U.S. 304, 317 (1995) (citation modified).  The limited scope of these interlocutory appeals means that an appellate court generally must defer to "the district court's determinations of fact," including any "inferences that the district court draws from those facts."  *Gillispie v. Miami Township*, 18 F.4th 909, 916 (6th Cir. 2021) (first quoting *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020); then quoting *Barry*, 895 F.3d at 443).  Likewise, "insofar as [the district court's] order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," it is unreviewable on interlocutory appeal.  *Johnson*, 515 U.S. at 320.  These guardrails focus appellate review of a denial of qualified immunity on "the purely legal question of whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions."  *Gillispie*, 18 F.4th at 916 (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 276 (6th Cir. 2020)) (citation modified).

Whether Long is entitled to qualified immunity for pre-deprivation violations of Washington's procedural due process rights turns on questions of law.  The existence of a property interest sufficient to trigger procedural due process rights is a question of state law.  *See Paul v. Davis*, 424 U.S. 693, 709 (1976).  In the public employment context, there are multiple sources of state law that might provide a property interest in continued employment, including but not limited to statutes, regulations, local charters, and contracts between the parties or their representatives, *see Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); depending on the claimed source, the existence of a property interest can be a question of law (e.g., regulations) or a mixed question of law and fact (e.g., contracts).  Washington contends he had a property interest in his continued employment as Fire Chief under the Charter, which is a question of law.  The question of what pre-termination process is due to an employee with a property interest in his continued employment is also a question of law.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972).

No. 25-3692 *Washington v. City of Cincinnati, et al.* Page 7

But as the district court's order explained, whether Washington had a property interest in his continued employment as of March 24, 2023, the day of his termination, depends in part on whether he waived his procedural due process rights by executing the MOU. Waiver is a mixed question of law and fact, *Sandler v. All Acquisition Corp., Inc.*, 954 F.2d 382, 384–85 (6th Cir. 1992), and the parties disputed it below. Washington argued at summary judgment that, once he completed his first six months as Fire Chief, he had a property interest sufficient to trigger due process protections under the Charter, meaning that the MOU was about his status probationary period and did not waive his Charter rights. Long and the City contended, however, that Washington had no such property interest under the Charter, and that, even if he did, he waived his rights by signing the MOU.

Counsel for Long and the City conceded during oral argument that they are not contesting whether Washington knowingly, intelligently, and voluntarily waived any procedural due process rights he had under the Charter by signing the MOU. Thus, we may exercise jurisdiction on the basis that Long and the City have conceded Washington's view of the facts regarding their waiver claim. *See Barry*, 895 F.3d at 443; *Anderson-Santos v. Kent County*, 94 F.4th 550, 554 (6th Cir. 2024). As a result, our jurisdiction is limited. We must presume Washington did not actually waive any rights, but, consistent with the qualified immunity inquiry, we may consider what a reasonable official in Long's position would have understood *about* Washington's rights based on the Charter and the fact that he signed the MOU. *See Gillman*, 126 F.4th at 1158.

### 2. Whether Long is Entitled to Qualified Immunity on the Merits

"Supreme Court and Sixth Circuit precedent clearly establishes that public employees who may be fired only for 'just cause' have property interests in their continued employment protected by due process." *Rodgers v. 36th Dist. Ct.*, 529 F. App'x 642, 650 (6th Cir. 2013) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Singfield*, 389 F.3d at 566; *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587 (6th Cir. 2004)). In *Loudermill*, the Supreme Court held that a security guard employed at a Cleveland public school had a property interest in his continued employment because a relevant Ohio state statute provided that he could be removed only for cause. *See* 470 U.S. at 538–39. "Procedural due process requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful

No. 25-3692                    *Washington v. City of Cincinnati, et al.*                    Page 8

manner' if the State seeks to deprive someone of constitutionally protected liberty or property interests." *Hieber v. Oakland County*, 136 F.4th 308, 321 (6th Cir. 2025) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). It has been clearly established by decades of Supreme Court precedent that the "root requirement" of procedural due process is a pretermination hearing— "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original)); *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (collecting cases); *Roth*, 408 U.S. at 570–71; *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950); *see also Hieber*, 136 F.4th at 321. While precisely what form such a hearing must take in the public employment context depends on a balancing of competing interests, *see Mathews*, 424 U.S. at 334–35, "a pretermination hearing must include: [1] oral or written notice of the charges, [2] an explanation of the employer's evidence, and [3] an opportunity for the employee to tell his side of the story." *Hieber*, 136 F.4th at 321–22 (quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)).

Under the Charter, an appointment to the position of Fire Chief comes with a probationary period of six months, during which "[t]he fire chief may be removed at any time by the city manager." Charter of the City of Cincinnati, Art. V, § 6. But "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause including incompetency, inefficiency, dishonesty, insubordination, unsatisfactory performance, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of any felony." *Id.* The meaning of these provisions is unmistakable: once a Fire Chief serves six months, he can be terminated only for cause, which means he has a right to a pre-termination hearing under binding—and clearly established—precedent. *See Roth*, 408 U.S. at 570–71; *Loudermill*, 470 U.S. at 538–39. The City of Cincinnati evidently understood this, as shown by an internal memorandum from a previous City Manager explaining that "[a]fter serving for six months, the Police and Fire Chiefs may be removed only for cause." R. 40-9, Internal Memorandum, PageID 1814. Washington was appointed Fire Chief in May 2021, so his probationary period would have concluded in November 2021, at which point he attained for-cause status. Thus, the plain text of the Charter clearly indicates that Washington had a property interest in his continued employment as Fire Chief at the time he was terminated.

Long and the City argue, however, that regardless of what the Charter provides, it could not have been clear that Washington had for-cause protection after he signed the MOU.  As noted, Long and the City concede for purposes of this interlocutory appeal that Washington did not in fact intend to waive, or understand himself to be waiving, any procedural due process rights by executing the MOU.  Thus, we may consider the MOU only in the limited capacity of what a reasonable official in Long's position would have understood about Washington's status based on the fact that he signed the MOU.

It is clearly established that "clear and unmistakable language . . . is necessary to waive procedural due process rights."  *Morrison v. Warren*, 375 F.3d 468, 474 (6th Cir. 2004) (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78–79 (1998)).  This rule generally requires language specifically identifying the rights to be waived.  The plaintiff in *Morrison*, a former deputy sheriff who alleged he was discharged without adequate process, signed a collective bargaining agreement that contained this arbitration clause: "Failure to elect and pursue one of these three options [appear at the hearing; appear at the hearing with counsel; or elect in writing to waive the hearing opportunity] will be deemed a waiver of the employee's rights to disciplinary hearings."  *Id.* (alteration in original).  We held that this language was not a "clear and unmistakable" waiver of Morrison's procedural due process rights, even though it expressly discussed the possibility of waiving disciplinary hearings, because "[t]he only reference to waiver in Morrison's arbitration clause relate[d] to the Sheriff's Office's disciplinary procedures, not the Fourteenth Amendment."  *Id.*  We reiterated the same principle a few years prior to Washington's termination in *Endres v. Northeast Ohio Medical University*, which concerned the dismissal of a medical student from a public university for allegedly cheating on a test: "parties may agree by contract to waive their constitutional rights . . .  Such contracts, however, require 'clear and unmistakable language' for us to infer that one party has agreed to waive his constitutional rights."  938 F.3d 281, 300 (6th Cir. 2019) (citing *Morrison*, 375 F.3d at 474).  Thus, a reasonable official in Long's position would have known that a contractual waiver of procedural due process rights must be "clear and unmistakable."  *Morrison*, 375 F.3d at 474.

The contract in this case falls short of that standard.  Like the collective bargaining agreement in *Morrison*, the MOU contains no references to the Fourteenth Amendment or

No. 25-3692                    *Washington v. City of Cincinnati, et al.*                    Page 10

Washington's due process rights.  *See id.*  The MOU likewise makes no mention of the Charter or any rights Washington had under it.  In fact, the only reference to any "right" in the MOU pertains to opportunities that are wholly separate from procedural due process rights: "In accepting unclassified appointments, employees forfeit the right to seek other employment via lateral transfers and the opportunity to take competitive, promotional exams."  R. 40-2, PageID 1764.  As compared to the reference to waiving disciplinary hearings that we found insufficient in *Morrison*, *see* 375 F.3d at 474, it is even more obvious here that the possibility of "forfeit[ing] the right" to pursue "lateral transfers and . . . competitive, promotional exams" has nothing to do with waiving procedural due process rights under the Fourteenth Amendment.

Long and the City emphasize that the MOU provides that "[t]he position of Fire Chief is an unclassified position" and unclassified employees "serve at the pleasure of the appointing authority and can be dismissed from employment without cause at any time."  R. 40-2, PageID 1764.  It is difficult to call this language a "clear and unmistakable" waiver, *Morrison*, 375 F.3d at 474, when it contains no express indication that Washington is giving up anything; it merely states that Fire Chief is an unclassified position and offers a brief explanation of what unclassified means.  On the other hand, and crucially on this record, the MOU's language is wholly consistent with Washington's six-month probationary period, during which the Charter provided he was unclassified and could be removed at any time by the City Manager.  The MOU could have been simply an acknowledgment of this *temporary* status.  And a reasonable official in Long's position certainly would have known about the probationary period as provided in the Charter.  Thus, it was not "clear and unmistakable" that Washington's execution of the MOU was a waiver of procedural due process rights he had not yet accrued.  *Id.*

For all these reasons, a reasonable official in Long's position (a) would have known that Washington, in his position as Fire Chief under the Charter, accrued for-cause protection following his six-month probationary period; and (b) would not have presumed the MOU operated as a waiver of the rights afforded by that status.  Long's failure to provide Washington with any pre-termination process before firing him on March 24, 2023, was a violation of clearly established law.  *See Loudermill*, 470 U.S. at 538–39.

Long and the City seek to evade this conclusion by claiming that relying on cases like *Loudermill* casts the "clearly established" net too widely.  They note that the Supreme Court has cautioned courts "not to define clearly established law at a high level of generality."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation modified).  This principle, however, is not without limits, as "an official can be on notice that his conduct violates established law even in novel factual situations.  The operative inquiry is not whether a previous court faced perfectly analogous facts—it is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 904 (6th Cir. 2019) (quoting *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015)).

The type of constitutional right at issue matters too.  The Supreme Court clarified in *Mullenix* that "[s]uch specificity" in the clearly established inquiry "is especially important in the Fourth Amendment context."  577 U.S. at 12.  There are meaningful distinctions between the procedural due process claim here and "Fourth Amendment cases involving split-second decisions where officials genuinely—but perhaps mistakenly—believe their actions to be appropriate." *Finley v. Huss*, 102 F.4th 789, 810 (6th Cir. 2024).  Fourth Amendment claims often demand that we apply general standards to complicated, fact-specific scenarios in which law enforcement officers made quick decisions, often in the face of danger to themselves or others. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Puskas v. Delaware County*, 56 F.4th 1088, 1096 (6th Cir. 2023).  The type of procedural due process claim at issue in this case, however, relies on a principle much closer to a rule than a fact-bound standard:  If a public employee has for-cause removal protection, then he has a right to a pretermination hearing. *Loudermill*, 470 U.S. at 538–39.  Long and the City, moreover, had ample time to consider whether to provide Washington a pretermination hearing; there was no imminency or risk of danger.  Indeed, they could—and did—consult counsel, who advised that Washington needed a hearing.  These distinctions from the Fourth Amendment context justify requiring a "less granular" analogue here. *Finley*, 102 F.4th at 810; *see also Pearson v. Mich. Dep't of Corr.*, 170 F.4th 1027, 1050–51 (6th Cir. 2026) (White, J., concurring in part and dissenting in part).

Nonetheless, Long and the City attempt to recast the clearly established inquiry in ways that are overly specific to the unique facts of this case, *see Cahoo*, 912 F.3d at 904, and that, in

addition, fail on their own terms.  First, they argue that Long is entitled to qualified immunity because, at the time of Washington's termination, it was not sufficiently established under Ohio law that the *specific language* in Article V, Section 6 of the Charter gives a Fire Chief a property interest in his continued employment.  But as Long and the City recognize elsewhere in their briefing, it is "clearly established [under Ohio law] that provisions of municipal charters should be given their plain meaning, and that unambiguous language must be applied faithfully in accordance with its plain meaning."  *Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006) (citing *State ex rel. Misnor v. Eschen*, 656 N.E.2d 940, 944 (Ohio 1995); *Roxane Labs., Inc. v. Tracy*, 661 N.E.2d 1011, 1012 (Ohio 1996)).  Under *Silberstein*, then, we need only observe that it is clearly established that unambiguous language in an Ohio municipal charter means what it says, which here is that "[a]fter the fire chief has served six months, he or she shall be subject to removal only for cause."  Charter of the City of Cincinnati, Art. V, § 6; *see* 440 F.3d at 316.

Long and the City further argue that a reasonable officer would not have known the Charter creates a property interest in a Fire Chief's continued employment when, in addition to the language granting for-cause status, it states that Fire Chief is an "unclassified" position.  Generally, a classified public employee in Ohio has an interest in continued employment protected by procedural due process, while an unclassified employee does not.  *See Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995).  There are two problems with the Defendants' argument on this point.  First, to the extent Long and the City assume that "unclassified" status is synonymous with lacking for-cause removal protection, it is clear that the Charter's references to unclassified status apply only to the six-month probationary period at the beginning of the Fire Chief's employment.  *See* Charter of the City of Cincinnati, Art. V, § 6.  Second, whether employees have a property interest in continued employment under Ohio law turns on whether they have for-cause removal protection, not whether they are labeled "classified."  For example, the Ohio Court of Appeals had held that village police officers who hold unclassified positions but "can be terminated only for just or reasonable cause" have "a property interest in continued employment."  *Haven v. Lodi*, 200 N.E.3d 395, 404 (Ohio Ct. App. 2022) (internal quotation omitted); *see also Velazquez v. Village of Bratenahl*, No. 81592, 2003 WL 549967, at *2–3 (Ohio Ct. App. Feb. 27, 2003); *Lowe v. Village of McArthur*, No. 06-cv-738, 2007 WL 654225,

at \*2–3 (S.D. Ohio Feb. 23, 2007). *Loudermill* confirms this point, as it explained that "the relevant portion" of the Ohio statute conveying a property interest in continued employment in that case was the portion providing for-cause removal protection. 470 U.S. at 539 n.4. Thus, given the Charter's plain statement that Washington could only be removed for cause after six months, he had a property interest in continued employment after six months regardless of whether he was classified or not. The Charter's references to unclassified status cannot negate the for-cause protection, and thus the property interest, it plainly provides.

The dissent's arguments to the contrary misapprehend the qualified immunity standard and how it interacts with the substantive legal rules that control this case. "The operative inquiry" in applying the clearly established prong of qualified immunity "is not whether a previous court faced perfectly analogous facts." *Cahoo*, 912 F.3d at 904. Rather, we have instructed, the question "is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted,'" *id.* (quoting *Baynes*, 799 F.3d at 610)—or as the Supreme Court put it recently in *Zorn v. Linton*, "[a] right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right," 146 S. Ct. 926, 930 (2026) (per curiam) (citation modified). Whether a violation is "sufficiently clear" under this standard, *id.*, depends necessarily on both the substantive law and the factual situation at hand. In the procedural due process context, the relevant legal rules are simple: a provision of for-cause removal protection confers procedural due process rights to a public employee, including the right to a pre-termination hearing, *see, e.g.*, *Hieber*, 136 F.4th at 321; and, once conferred, such rights can be waived only by "clear and unmistakable language," *Morrison*, 375 F.3d at 474 (citing *Wright*, 525 U.S. at 78–79). We have applied these rules to novel situations before, including in the absence of a prior decision on the exact rights-governing language at issue, *see Silberstein*, 440 F.3d at 316, as the dissent concedes, Dissenting Op. at 20.

A core premise of the qualified immunity doctrine is that "a reasonably competent public official should know the law governing [her] conduct" and "be made to hesitate" when clearly established law calls her to do so. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). In the procedural due process context, the law commands a public employer to hesitate in the absence

of "clear and unmistakable language" waiving an employee's rights. *Morrison*, 375 F.3d at 474 (citing *Wright*, 525 U.S. at 78–79). The dissent's reasoning would instead extend immunity wherever a public employer can point to ambiguous language that does not come close to clearly waiving a constitutional right. This is the opposite of what the waiver standard provides, *id.*, and it would open the door to obvious abuses. Tellingly, the dissent faults the majority for "demand[ing]" application of the clearly established rule that a waiver of procedural due process rights must be "clear and unmistakable," *id.* Dissenting Op. at 24. But that is the law as our court has articulated it. *See id.* For the reasons we have explained, it should have been clear to "every reasonable official," *Zorn*, 146 S. Ct. at 930, that Long's termination of Washington would violate his rights. And not only should Long's violation have been clear to a reasonable official in her position, but the record reflects that it was in fact clear to the other officials surrounding her at the time. When Long consulted with the City's legal department, she was advised that Washington "would need a hearing"—but she chose to ignore that advice and fire him anyway. R. 36, Long Depo., PageID 1209, 1217. This is exactly the sort of "lawless conduct" that does not warrant qualified immunity. *Harlow*, 457 U.S. at 819.

We hold that the district court did not err in denying qualified immunity to Long for pre-deprivation violations of Washington's procedural due process rights.[1]

## B.        Long's Assertion of Statutory Immunity for the Defamation Claim

We have jurisdiction to review a denial of statutory immunity on an interlocutory basis "only when the state immunity in question would provide complete immunity from suit." *Frenchko v. Monroe*, 160 F.4th 784, 804 (6th Cir. 2025) (quoting *Range v. Douglas*, 763 F.3d 573, 581 (6th Cir. 2014)). Provided this requirement is satisfied, the rules governing jurisdiction over interlocutory appeals from denials of statutory immunity resemble those governing qualified immunity appeals: there is no jurisdiction to review a district court's factual

---

[1]In so holding, we draw no conclusions regarding the district court's grant of qualified immunity to Long for *post*-deprivation violations of Washington's procedural due process rights. We have previously instructed, though, that analysis of post-deprivation process "has no place" in the qualified immunity inquiry because it concerns when a government entity can cure an officer's due process violation after it has occurred, not whether the violation was clearly established. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 902–03 (6th Cir. 2014) (citing *Silberstein*, 440 F.3d at 315–18; *Thomas v. Cohen*, 304 F.3d 563, 579–81 (6th Cir. 2002)).

determinations, *see id.* at 806, and we have dismissed for lack of jurisdiction when a defendant fails to concede underlying factual disputes, *see Moldowan v. City of Warren*, 578 F.3d 351, 398 (6th Cir. 2009).  We also instructed in *Frenchko* that, "to the extent the parties' state immunity arguments stray into the merits of [the plaintiff's] underlying state tort claims, we may consider them only if they are inextricably intertwined with the statutory immunity issue." *Frenchko*, 160 F.4th at 804 (citation modified).

The Ohio statute at issue here provides immunity for "any act or omission in connection with a governmental or proprietary function," but this immunity does not apply when an official acts "with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code Ann. § 2744.03(A)(6)(b).  We recognized in *Chesher v. Neyer*, construing a 2003 legislative amendment, that this statute "provides political officials and subdivisions with immunity from suit, and thus warrants interlocutory appellate jurisdiction under the collateral order doctrine." 477 F.3d 784, 794 (6th Cir. 2007) (citing Ohio Rev. Code Ann. § 2744.02(C)).  "Whether a government employee acted with the intent necessary to overcome the presumption of immunity [under § 2744.03(A)(6)(b)] is typically a jury question." *Post v. City of Monroe Falls*, 861 F. App'x 69, 79 (6th Cir. July 1, 2021).  We have previously exercised jurisdiction on an interlocutory basis over whether the record, viewed in the plaintiff's favor, is sufficient to submit that question to a jury. *See DiLuzio v. Village of Yorkville*, 796 F.3d 604, 612 (6th Cir. 2015); *Frenchko*, 160 F.4th at 803–07.

Here, Long and the City contend they are entitled to summary judgment on the statutory immunity issue for two reasons: (1) the district court erred in finding there was sufficient evidence of knowing falsity for a jury to infer malice or bad faith, and (2) the district court erred in considering evidence related to Long's violation of Washington's procedural due process rights as relevant to statutory immunity for the defamation claim.  The parties' arguments regarding falsity are focused especially on Washington's efforts (or, in Long and the City's view, lack thereof) toward completion of a climate assessment after the department received complaints from female firefighters about poor workplace culture.  Long's memorandum following Washington's termination stated that he "was directed to conduct a climate assessment," but "[t]hat assessment has never moved forward."  R. 7-4, Ex. D, PageID 83.

The memorandum cited this alleged failure as evidence for the statement that "Mr. Washington has proven to be an ineffective leader who is unwilling to take ownership for his decisions." R. 7-4, PageID 83. To the extent this argument requires examination of the underlying merits of the defamation claim, *see Frenchko*, 160 F.4th at 804, we agree with the district court's determination that Washington presented sufficient evidence regarding his efforts on the climate assessment "to create a triable issue on whether Long's statements were true," R. 47, PageID 1973. As to the mental state required to defeat immunity, Washington contends that Long purposely avoided the truth because the record shows she knew or should have known that Washington attempted to move forward with the assessment but she still chose to publish false statements that placed inordinate blame for the workplace culture problems on him. This framing resembles our decision in *Post*, where we found a reasonable jury could find an officer defamed the plaintiff with § 2744.03(A)(6)(b)'s requisite mental state on the theory that the officer not only lied but "overstated [the plaintiff's] actions by saying that [he] was insubordinate and untruthful." *Post*, 861 F. App'x at 80. Viewing the factual record in Washington's favor, we agree that a reasonable jury could find Long acted with malice or bad faith on this basis.

In the context of the procedural due process violation, the district court held a reasonable jury could find that Long understood she was terminating Washington in violation of his constitutional rights; in turn, such jury could consider this as circumstantial evidence of malice or bad faith in her subsequent statements relevant to the defamation claim. As we have observed, whether an employee acts with the requisite intent to overcome § 2744.03(A)(6)(b) immunity is ordinarily a question for the jury. *See id.* at 79. We see no reason that a jury should not be able to consider evidence suggesting that an officer intentionally violated the plaintiff's constitutional rights as relevant to this inquiry. The record contains numerous uncontested facts based on which a reasonable jury could find that Long's violation of Washington's procedural due process rights was knowing and intentional. These facts include (1) her admission at deposition that she was advised by the legal department that Washington was entitled to a hearing, (2) that the termination letter included an excerpt of the Charter language providing that fire chiefs accrue for-cause protection after six months, and (3) that Long's memorandum acknowledged she had fired Washington "for cause." On this record, a reasonable jury could infer that Long acted with malice or bad faith in making the allegedly defamatory statements

about Washington related to his termination based on the record evidence suggesting that she intentionally disregarded his constitutional rights in the course of that termination.

For these reasons, we affirm the district court's denial of statutory immunity for the defamation claim under § 2744.03(A)(6)(b).

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM**. This case is **REMANDED** to the district court for further proceedings consistent with this opinion.

No. 25-3692              *Washington v. City of Cincinnati, et al.*              Page 18

---------------------------------

## CONCURRENCE / DISSENT

---------------------------------

READLER, Circuit Judge, concurring in part and dissenting in part.  Following his termination from his position as Cincinnati's fire chief, Michael Washington filed suit against city manager Sheryl Long and the City of Cincinnati.  Washington asserted two claims:  that defendants violated his Fourteenth Amendment due process rights, and that they defamed him.  I share the majority opinion's view that, on this record, Long cannot claim statutory immunity from Washington's defamation claim.  But it is more difficult to accept the majority opinion's conclusion that Long is not entitled to qualified immunity for Washington's due process claims.  Washington signed a document that indicated he was an unclassified employee, provided for no property right in his employment, and allowed for his immediate termination.  Because it was far from clearly established that Long could not immediately terminate Washington's employment under these circumstances, she is entitled to qualified immunity.

I.

Washington became Cincinnati's fire chief in 2021.  The Cincinnati City Charter stated that the position fell within the "unclassified" civil service, meaning that Washington "could be removed at any time by the city manager."  Cincinnati City Charter, art. V, § 6.  After a probationary period of "six months," however, the city charter afforded Washington "for cause" protections, subject to termination only for "incompetency, inefficiency, dishonesty," and the like.  *Id.*

Were that the end of the story, it would also likely be the end of the line for Long's assertion of qualified immunity.  But consider what happened next.  Washington signed a memorandum entitled, "Understanding of Unclassified Appointment."  R.40-2, PageID 1764.  The agreement stated that "Fire Chief is an unclassified position," and that those "accepting employment in unclassified positions serve at the pleasure" of the city manager.  *Id.*  And unlike the city charter, the memorandum did not place any limits on his at-will removability.  Much to the contrary, in fact.  Unclassified employees like Washington, the agreement explained, "can be

No. 25-3692                      *Washington v. City of Cincinnati, et al.*                      Page 19

dismissed from employment without cause at any time." *Id.* And that is exactly what happened. Roughly two years later, Long informed Washington that his employment was over, effective immediately.

Washington believes that Long violated his Fourteenth Amendment due process rights by failing to afford him a hearing before terminating his employment. Long responds that her actions are protected by qualified immunity. She has the superior argument.

## II.

For purposes of this appeal, Long concedes that, accepting the facts in Washington's favor, firing Washington violated his constitutional right to due process in that she deprived Washington of a protected "property" interest in his employment without a pre-termination hearing. U.S. Const. amend. XIV, § 1; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985) (requiring "some form of pretermination hearing" for public employees with "for cause" removal protections). To overcome Long's assertion of qualified immunity, however, Washington must also show that Long's actions "violate[d] clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam). Because Washington's protected property interest was not "clearly established," Long's claim of qualified immunity prevails.

A. How to recognize a clearly established right is well understood. A right is clearly established only if "it is sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." *Id.* (citation modified) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam)). To clear this high bar with respect to Long's decision to fire Washington without a pretermination hearing, Washington must put forward "a sufficiently analogous case (or cases) from which a reasonable official would understand" that Long's actions violate the Constitution. *Hester v. Chester County*, 162 F.4th 780, 785 (6th Cir. 2025) (citation modified). Critically, any case Washington brings to the table must be "'particularized' to the facts" of the one before us today. *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 302 (6th Cir. 2019) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)).

Despite these admonitions to drill down on the facts at hand, Washington floats at 20,000 feet. From that distant vantagepoint, the Supreme Court's decision in *Loudermill* he embraces

may appear to clearly establish Washington's right to due process in his particular factual setting. But a closer look reveals that *Loudermill* announced arguably the broadest possible legal proposition for a case like this:  Public employees have a protected property interest in their employment if state law requires that they be fired for cause.  *See* 470 U.S. at 538–39.  Notably, it said nothing about the more specific dispute here.  Washington signed an agreement acknowledging that he "can be dismissed . . . without cause at any time."  R.40-2, PageID 1764. That language seems to undo the city charter's grant of for-cause removal protections.  So by signing the agreement, Washington arguably waived whatever due process rights the charter afforded him.  With that context in mind, to embrace *Loudermill*—a case that has nothing to do with conflicting state legal obligations or waiver—as defining clearly established law in this unique factual setting effectively "convert[s] the rule of qualified immunity . . . into a rule of virtually unqualified liability."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

True, as the majority opinion chips in, in *Silberstein v. City of Dayton*, 440 F.3d 306 (6th Cir. 2008), we arguably extended *Loudermill* to situations where a city charter affords protections by its "plain language."  *Id.* at 316.  Yet Washington does not cite that case on his own behalf.  And at any rate, even *Silberstein* is nowhere close to being "particularized." *Endres*, 938 F.3d at 302.  After all, today's case is about far more than Cincinnati's city charter. Recall that Washington's employment was subject to two governing documents, and the parties fairly disagree over how to read these documents in tandem.  With that debate in play, Washington's case falls well outside the factual settings where we have said a reasonable official, working "within his sphere of official responsibility," would know that the actions at issue "violate . . . constitutional rights."  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (citation modified).  Another example is *Corbett v. Garland*, 228 F. App'x 525 (6th Cir. 2007). There, we deemed *Loudermill* and *Silberstein* as failing to clearly establish the law in instances where an employee arguably waived the property interest in her employment.  *See* 228 F. App'x at 531.  At day's end, with no case coming close to the facts at hand, existing law does not put Washington's case "beyond debate."  *Zorn*, 146 S. Ct. at 930 (citation modified).

To sidestep that straightforward conclusion, the majority opinion devises a hitherto unknown rule within our qualified immunity jurisprudence:  The case law requiring a high

degree of specificity before a case may count as a relevant precedent in the qualified immunity setting governs only Fourth Amendment excessive force claims.  Maj. Op. at 11.   But outside the excessive force framework, we are told, these requirements relax.  *Id.*  So as Washington's case arises in the Fourteenth (rather than the Fourth) Amendment context, he may satisfy qualified immunity's "clearly established" prong with "less granular" case law analogues.  *Id.*

That approach is difficult to square with precedent, both the Supreme Court's and our own.  Regardless of the constitutional right at issue, the Supreme Court has consistently awarded qualified immunity unless "existing precedent" put the "constitutional question beyond debate." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citation modified) (Eighth Amendment); *see also Ziglar v. Abbasi*, 582 U.S. 120, 151–52 (2017) (Fifth Amendment).  And it has done so across the board by employing an exacting "granularity" standard.  *See, e.g.*, *Lane v. Franks*, 573 U.S. 228, 245 (2014) (granting qualified immunity in First Amendment case because no "precedent . . . provide[d] clear notice that subpoenaed testimony concerning information acquired through public employment is . . . entitled to First Amendment protection").  Our precedents, including some the majority opinion cites, are similarly aligned.  For procedural due process claims under the Fourteenth Amendment, we require a § 1983 plaintiff to cite "decisions" that are "particularized to the facts" of their case to overcome an assertion of qualified immunity. *Endres*, 938 F.3d at 302 (citation modified); *see Silberstein*, 440 F.3d at 316–17; *Mich. Interlock, LLC v. Alcohol Detection Sys., LLC*, 802 F. App'x 993, 1002–03 (6th Cir. 2020).

Tellingly, the majority opinion derives its contrary rule from a single case, *Finley v. Huss*, 102 F.4th 789 (6th Cir. 2024), and from dicta at that.  In *Finley*, a divided panel mused that "less granular principles" could clearly establish the law with respect to Eighth Amendment deliberate indifference claims.  102 F.4th at 810.  That lone statement is unsupported.  *See id.* at 830 (Thapar, J., concurring in part and dissenting in part).  All agree that Fourth Amendment excessive force claims, unlike certain other constitutional claims, tend to arise in situations in which officers have less time to deliberate.  But as that distinction is already reflected in the substantive standards to establish a constitutional violation, it does not justify alterations to qualified immunity's clearly established prong.  Either way, *Finley*'s observation about the Eighth Amendment has no bearing on today's case, which rests on the Fourteenth Amendment.

No. 25-3692                    *Washington v. City of Cincinnati, et al.*                    Page 22

The majority opinion's unprecedented approach here bears emphasizing.  While couched as simply imposing a rule of "less granular[ity]" outside the Fourth Amendment qualified immunity setting, the resulting practice is one of no granularity at all, with the clearly established prong satisfied here by the most general propositions announced in a foundational procedural due process case, *Loudermill*.  We have been admonished "repeatedly . . . not to define clearly established law at too high a level of generality."  *City of Tahlequah v. Bond*, 142 S. Ct. 9, 13 (2021); *see Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (admonishing this Court).  And when we do, our fate is often a summary reversal.  *See Zorn*, 146 S. Ct. at 931 (summarily reversing the denial of qualified immunity); Maj. Op. at 13–14 (citing *Zorn* favorably); *Romero v. City of Lansing*, 167 F.4th 394, 402 n.1 (6th Cir. 2026) (Thapar and Hermandorfer, JJ., dissenting from denial of rehearing en banc) (collecting summary reversals).  We should be cautious about tempting fate yet again.

B.  Washington does have an alternative path available to him.  But it is arguably an even more difficult one.  Without a precedent in today's factual ballpark, he may argue that the record is "obvious" that Long acted unconstitutionally.  *Segler v. City of Detroit*, 23-1897, 2024 WL 5135735, at *3 (6th Cir. Dec. 17, 2024) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)); *see United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (6th Cir. 2014) (requiring "an obvious case" (citation modified)); *Rodgers v. 36th Dist. Ct.*, 529 F. App'x 642, 651 (6th Cir. 2013) ("obvious").  Only the "rare" plaintiff is able to do so.  *Wesby*, 583 U.S. at 64.  Indeed, the Supreme Court has only identified two "obvious" cases in the last quarter century, both concerning horrific prison conditions and far removed from today's facts.  *See Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

These admonitions notwithstanding, Washington believes that his case fits the bill.  And comfortably so, it seems.  As his counsel summed things up at oral argument, "even a second grader" would recognize Washington's protected property interest in his city employment.  Oral Argument at 27:17–28:25.  That is so, Washington says, because the memorandum he signed is entirely consistent with the city charter in that, to his mind, the memorandum merely apprised him that he was terminable at will only during the six-month probationary period set forth in the city charter.

Beyond the fact that it is the rare elementary school that includes a due process curriculum alongside reading, writing, and arithmetic, Washington's reading has numerous flaws.  For one, it overlooks the city charter's own internal tension—it describes Washington's position as within "the unclassified civil service," a status under Ohio law that corresponds to at-will employment, *see Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995), yet also states that Washington became "subject to removal only for cause" after "six months" on the job, a non-at-will status, Cincinnati City Charter, art. V, § 6.  For another, interpreting the later-signed memorandum as simply informing Washington that his at-will status lasted only for a six-month probationary period, robs the memorandum of any meaning, if, as Washington argues, the city charter already addressed the length of the probationary period.  *Eagle Realty Invs., Inc. v. Dumon*, 201 N.E.3d 963, 969 (Ohio Ct. App. 2022) ("We . . . avoid any interpretation of a contract that would render terms or provisions superfluous or meaningless.").  In actuality, the later-signed memorandum arguably has a more muscular effect.  The memorandum describes Washington as an "unclassified employee."  It makes no reference to the city charter, nor any "for cause" removal protection.  And it instructs Washington that he could be fired "without cause *at any time*," a prerogative that it is difficult to believe evaporated simply because Washington had completed his probationary period.  R.40-2, PageID 1764 (emphasis added).  If one were looking for a way to harmonize the city charter and the memorandum, as Washington suggests, it would be to highlight the fact that both documents describe the fire chief position as "unclassified," and to note that neither document, contrary to Washington's suggestion, indicates that Washington's position shifts into the classified civil service at the end of six months. Cincinnati City Charter, art. V, § 6.

A more persuasive reading is that the memorandum cements Washington's status as an at-will employee for the duration of his employment.  Among other indicators, as just noted, the memorandum warns Washington that he "can be dismissed from employment . . . without cause."  R.40-2, PageID 1764.  So even if the city charter is read to create termination protections for Washington, most readers would expect that the memorandum's later, contrary admonition displaces the city charter and any rights Washington might claim in that document, a fundamental principle of contract law.  *See Cleveland Police Patrolmen's Ass'n v. Cleveland*, 643 N.E.2d 559, 564 (Ohio Ct. App. 1994) ("[T]o the extent that the provisions of the second

contract are inconsistent with those of the first, the last contract, and not the first, measures the obligations of the parties."").  In second grade nomenclature, if a teacher has a standard policy of allowing students to take recess after lunch but one day tells the students that they will not be allowed to take recess due to their bad behavior that morning, most in the classroom would view their afternoon playground dreams as having been dashed.  Returning to the facts here, "a reasonable person" in Long's shoes could fairly conclude that the memorandum signed by Washington signified a "waiver" of the charter's for-cause removal protections—and Washington's right to due process alongside them.  *Corbett*, 228 F. App'x at 533.  At the very least, this case is far from the rare "obvious" constitutional violation that can overcome qualified immunity.

The majority opinion similarly fails to give proper treatment to the memorandum Washington executed.  Before it will infer a waiver of due process rights from that document, the majority opinion demands "clear and unmistakable language" to that effect.  *Endres*, 938 F.3d at 300 (citation modified).  And because the memorandum does not expressly mention the city charter or use the words "due process," it was not clear-cut enough to effect a waiver in the majority opinion's eyes.  Maj. Op. at 9–10.

While we never lightly assume a waiver of constitutional rights, *see D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 186 (1972), the majority opinion sets an extraordinarily high bar.  After conceding that the city charter likewise says nothing about due process, the majority opinion nonetheless flunks the signed memorandum for failing to do the same.  Two problems with that approach immediately spring to mind.  One, a written waiver, contrary to the majority opinion's suggestion, need not identify a constitutional amendment by name to have effect.  *See, e.g., id.*; *Corbett*, 228 F. App'x at 533; *Murtha v. Rossford Exempted Vill. Schs.*, 21-3449, 2021 WL 4950238, at *3 (6th Cir. Oct. 25, 2021); *Yoder v. Univ. of Louisville*, 526 F. App'x 537, 546–47 (6th Cir. 2013).  Here, the language at issue provided more than enough clarity without citing the Fourteenth Amendment's Due Process Clause.  Two, the majority opinion employs uneven standards.  If it is enough to say that Long should have known about Washington's procedural due process rights based on the charter's "for cause" language, then it stands to

reason that Long would treat the memorandum's equal yet opposite "without cause" language as "clear and unmistakable" enough to claw back those rights. *Endres*, 938 F.3d at 300.

The majority opinion next critiques the memorandum for failing to mention the city charter, thereby undermining its force. In so doing, the majority opinion loses track of the governing legal standard. To be sure, language along those lines might have clarified the memorandum's relationship to the city charter. But the question here is not simply whether the memorandum was "clear and unmistakable" in classifying Washington as an at-will employee. *Id.* Instead, we ask whether any reasonable official could have viewed it as such. *See Zorn*, 146 S. Ct. at 930. In other words, even if "there is evidence that [Washington] did not relinquish" his right to a pretermination hearing, that does not mean it would be "clear to a reasonable person in [Long's] position that [Washington] could overcome the defense[] of waiver." *Corbett*, 228 F. App'x at 533. Like many agreements, the memorandum could have had clearer wording. That said, not every official, having perceived the conflict between the charter and the memorandum, would automatically deem the latter an empty vessel, carrying no waiver or other meaningful implications.

But even accepting that neither side has an entirely convincing position, that reality only confirms why Long's assertion of qualified immunity prevails. That one can fairly debate whether Washington was awarded a right to a pretermination hearing and then later knowingly and voluntarily relinquished his right is exactly how the district court sized things up. After acknowledging the "ambiguous" relationship between the city charter and the memorandum, R.47, PageID 1951, the district court turned to contract principles to try to resolve that ambiguity, only to construe the memorandum against the drafter, the contract-world equivalent of throwing in the towel. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (citing 3 A. Corbin, *Contracts* § 559 (1960)). Even the majority opinion concedes that Washington's interpretation merely "could" be correct. Maj. Op. at 10. In other words, it is exceedingly difficult to say that someone in Long's position could only have read the two writings as does Washington. That reality alone is dispositive. *See Corbett*, 228 F. App'x at 533.

With the documentary evidence working against it, the majority opinion takes its final resort in Long's deposition testimony. As it understands that testimony, Long admitted that the

No. 25-3692                  *Washington v. City of Cincinnati, et al.*                  Page 26

City's legal department informed her that Washington "would need a hearing," thereby confirming that Long and other officials in fact shared Washington's view of the governing documents.  R.36, PageID 1209.  But to draw that conclusion, one must first overlook a host of factual and legal deficiencies alike.  As a factual matter, it is not at all clear that the legal department reviewed the same set of documents before us, leaving us uncertain as to how we should value the department's guidance.  Equally true, as the "hearing" referenced by the department evidently alluded to a post-termination hearing, that information offers far-from-clear direction to a reasonable official in Long's shoes regarding any pre-termination duties owed to Washington.  In any event, as a legal matter, "subjective beliefs are irrelevant" to the clearly established inquiry.  *Rodgers*, 529 F. App'x at 651; *see Harlow*, 457 U.S. at 817–18.  As a result, how any particular City employee (including Long) might have interpreted the matters at hand has no bearing here.  Again, our inquiry is what a "reasonable official" would do under the circumstances.  *Zorn*, 146 S. Ct. at 930 (awarding qualified immunity) (citation modified).  And because not "*every* reasonable official" would have acted differently from Long in this setting, Washington cannot show that Long violated "clearly established law" and thus is undeserving of qualified immunity.  *Id.* at 930 (emphasis added).

*     *     *     *     *

In the end, the majority opinion turns the qualified immunity framework on its head. Rather than awarding qualified immunity unless it was obvious that Long violated Washington's clearly established rights, the majority opinion would *deny* qualified immunity unless it was obvious that Long did *not* do so.  Seeing things right side up, I would grant Long qualified immunity.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-3692

MICHAEL WASHINGTON,

     Plaintiff - Appellee,

     v.

CITY OF CINCINNATI, OHIO; SHERYL LONG, individually and in her official capacity as City Manager of the City of Cincinnati,

     Defendants - Appellants.

```
┌─────────────────────────────┐
│          FILED              │
│       Aug 13, 2026          │
│  KELLY L. STEPHENS, Clerk   │
└─────────────────────────────┘
```

Before:  STRANCH, READLER, and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of qualified and statutory immunity to Sheryl Long is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk